Green's Appeal.
Satterthwaite's Appeal. } Mary Paul's Estate.

*" Nephews and Nieces"* of *Testator, definition of.*— *What Legacies are within the Act of* 1834, *requiring Security from the primary Legatee.*

1. A testatrix by will made a residuary bequest to "all my nephews and nieces." *Held,* that only her own nephews and nieces were included, and not those of her husband.

2. A bequest of a sum of money to one in these words, "both principal and interest (if she needs it) during her lifetime, after which to be disposed of in like manner as the residue of my estate," (*i. e.*, among nephews and nieces of testator), is not within the Act of 24th February 1834, § 49, prohibiting its payment to the primary legatee without security.

APPEAL from the Orphans' Court of *Bucks county.*

These were appeals by J. B. Green and others, and by Edwin

Satterthwaithe and others, from the decree of the Orphans' Court, distributing the fund in the hands of Nathaniel F. Kinsey and Stephen Foulke, executors of Mary Paul, deceased.

The case was this: Mary Paul died April 29th 1859, leaving a will, which was duly admitted to probate, containing, among others, the following bequests:—

"I, Mary Paul, of Richland township, Bucks county, and state of Pennsylvania, widow, being of sound and disposing mind and memory, do make and put in writing this my last will and testament, in manner following, viz. :—

"First. It is my will, and I order that all my just debts and funeral expenses be duly paid as early after my decease as conveniently can be.

"Item. I give and bequeath unto my niece, Hannah Paul, $300.

"Item. I give and bequeath unto my niece, Mary P. Hallowell, $130—both of the above I direct to be paid by the executors of my late husband, Joseph Paul's estate, out of that which I have taken and remains in their hands not made over to me. And the remainder thereof I give and bequeath unto all my nephews and nieces on the Paul side, share and share alike, except Joshua P. Lukens, Joseph Paul, and all John Lloyd's children, and Mary P. Hallowell."

Then followed three bequests to her sisters.

"Item. I give and bequeath my silver cream-cup to my niece, Elizabeth Kinsey.

"Item. I give and bequeath to my niece, Ann Wright, my second best bed, and bedding therefor, bedstead, sacken and curtains, calico.

"I give and bequeath to my niece, Anna Green, my brittania coffee and tea pots.

"Item. I give and bequeath my common rocking-chair to Abigail R. Heacock.

"I desire that my brother, sisters, nephews, and nieces may make a family sale, and dispose of the remainder of goods of every description, and wearing apparel, amongst themselves.

"Item. I give and bequeath to my sister, Keziah Foulke, $2000, both principal and interest (if she needs it), her lifetime, after which to be disposed of in like manner as the residue of my estate; also, my black stuffed rocking-chair.

"Item. To my niece, Caroline Stokes, I give and bequeath $200.

"Item. And as regards the rest, residue, and remainder of my moneyed estate, I give and devise the same to all my nephews and nieces, share and share alike.

"And lastly, I nominate, constitute, and appoint my two

nephews, Nathaniel F. Kinsey and Stephen Foulke, the executors of this my will—hereby revoking all other wills, legacies, and bequests by me heretofore made, and declaring this, and no other, to be my last will and testament.

"In witness whereof," &c.

Mary Paul was the widow of Joseph Paul, deceased. Neither of them left issue. They were married October 13th 1847. At that time she was possessed in her own right of about $2300, all of which, with the exception of $251, in Lehigh Mortgage Loan, was converted by her husband to his own use. Joseph Paul, her husband, died November 30th 1857, leaving a will, dated May 31st 1852, proved December 26th 1857. By this will he made a provision for his widow, which she refused to accept, and on the 3d of February 1858, made her election to take such share of his estate as she would be entitled to under the intestate laws. By this election she was entitled to receive from her husband's personal estate the sum of $12,041.42, of which $7768.91 was paid to her in her lifetime, and $4272.71 remained in the hands of his executors at her death. She was also entitled to a dower in his real estate valued at from $10,000 to $12,000. In the sum paid her by the executors was included a ground-rent of the value of $1225. This was owned by her at her death, and was not devised by her will. The balance remaining in the hands of her husband's executors has been paid to her executors since her decease, and has been distributed by them according to the direction of her will.

She left surviving her, thirteen nephews and nieces, the children of her brothers and sisters, to wit, James B. Green et al., the appellants on one side of this case. She also left thirty-three nephews and nieces of her deceased husband, the children of his brothers and sisters, to wit, the appellants on the other side of the case, none of whom were related to her by blood.

Hannah Paul was a daughter of her husband's brother. Her mother had died when she was an infant, and she had lived from that time until she was six years old with the testatrix and her husband.

Mary P. Hallowell was a daughter of her husband's sister. She was born after his death, and received no share of his estate under his will. The testatrix in her lifetime had assigned to the father of this legatee for her use a bond for $422, which, with the legacy of $130, made an amount equal to what had been received by each of the other nieces and nephews of Joseph Paul, under his will.

Elizabeth Kinsey was related to her by affinity only, being the wife of her nephew, Nathaniel F. Kinsey.

Anna Green was the wife of her nephew, James B. Green.
The husbands of both are living.

The goods referred to in that clause of the will which disposes
of her wearing apparel, &c., were appraised at the sum of $176.60,
and have been distributed, according to the directions of the will,
among the brothers and sisters of the deceased, and her nephews
and nieces by blood.

The executors, in the settlement of their accounts, claimed
and received credit for the payment of all the legacies except
the $2000 bequeathed tó Keziah Foulke, and the residue of the
estate, leaving a balance in their hands of $5422.59.

Upon the confirmation of the account, Henry P. Ross, Esq.,
was appointed by the Orphans' Court as auditor to distribute this
balance. He reported that Keziah Foulke should be required to
give security as directed by the Act of February 24th 1834,
before receiving the legacy of $2000 bequeathed to her. The
remainder of the fund, after deducting this legacy and the costs
of audit, he distributed equally among all the nephews and nieces
of the testatrix and of her husband, excluding the wives of her
nephews, to whom specific legacies had been bequeathed.

To this report James B. Green, and the other appellants con-
nected with him, and also Keziah Foulke, filed exceptions. The
court confirmed the report, and decreed distribution accordingly,
but afterwards, during the same term, rescinded the decree so
far as it required Keziah Foulke to give security, and directed
her legacy to be paid to her without such security being given.

From this decree James B. Green and others, the nephews and
nieces of testatrix, appealed, alleging that they are entitled to
the whole of the residue, to the exclusion of the nephews and
nieces of her husband.

The nephews and nieces of the husband appealed, on the
ground that Keziah Foulke should be required to give security.

*C. E. Dubois* and *Richard Watson*, for J. B. Green *et al.*,
argued that the words " all my nephews and nieces," in the resi-
duary clause of the will, included only her own nephews and
nieces, to wit, the children of her brothers and sisters, and while
conceding that persons not strictly within a certain class may be
entitled to take under a bequest to such class, provided there is
a manifest intent to include them, insisted that without such
intention they are excluded: 2 Wms. on Executors 934; Storer
*v.* Wheatley's Executors, 1 Barr 506; Jarman on Wills 49; 2
Wms. on Executors 942, 946, 947; Dickinson *v.* Lee, 4 Watts 82:
Hallowell *v.* Phipps, 2 Wh. 376; Heck *v.* Cleppinger, 5 Barr
385; Lewis *v.* Fisher, 2 Yeates 196.

They argued further that a consideration of the circumstances

under which the will was made, the condition of her family and of her property, was proper in giving construction to the will of testatrix: Marshall's Appeal, 2 Barr 388.

Her property, amounting to $2000, had been converted by her husband to his own use—he made inadequate provision for her in his will. From what she received of his estate, she, in her lifetime, gave to his niece, Mary P. Hallowell, $422, and bequeathed her $130, to make her equal to the other legatees of her husband. She gave $300 to another of his nieces, and directed both these legacies to be taken from the $4272.71, due to her out of his estate, dividing the balance among certain of his nephews and nieces.

Of the $5422.57, for distribution among her own relatives, she gave $2000 to Keziah Foulke, leaving but $3395.59. If the nephews and nieces on both sides are to be included, those of her husband would receive $2435.97, while her own would receive only $959.62—a preference which cannot fairly be presumed.

In calling certain of her husband's relatives "my niece," several times in the will, she is only repeating a term of endearment common in social life, and not defining a legal relation, nor was she, or the person who wrote the will, accustomed to legal forms of expression.

She gives her wardrobe to her brother, sister, nephews, and nieces, at a family sale, and can hardly be supposed to intend to include in the disposition of such trifles so large a number as the auditor and the court below would include in this term.

*G. R. Fox* and *George Lear*, for appellees, answered the argument of the appellant, by referring to the report of the auditor, and to the opinion of the Orphans' Court on the exceptions which were filed against the confirmation of the report.

In support of the assignment of errors on the part of E. Satterthwaite *et al.*, they contended that the court below erred in directing the payment of the $2000 legacy to Keziah Foulke, without security: citing and relying on the Act of 24th February 1834, § 49; Brownfield's Estate, 8 Watts 465; Morris *v.* Phaler, 1 Watts 390. The will gives her no power of disposal, only the enjoyment of part, or all, as may be necessary, what is left to be disposed of as the residue of her estate. Duval's Appeal, 2 Wright 112, is a case in point, and a strong one in favour of requiring security. This bequest is within the words and spirit of the Act of 1834. It is for life, or at most upon the condition or contingency that the legatees shall need it.

*Dubois* and *Watson*, in reply, cited and relied on Hambright's Appeal, 2 Grant's Cases; Straub's Appeal, 1 Barr 86; Kinnard

*v.* Kinnard, 8 Watts 108; and denied that Duval's Appeal, 2 Wright 112, was in point, inasmuch as in that case the whole estate was limited over in case the devisees should die without children: while here, only what is left, which is uncertain and which may be nothing, goes over at the death of the legatee.

The opinion of the court was delivered, February 10th 1862, by LOWRIE, C. J.—In strict propriety, and in legal usage, it is only the children of brothers and sisters that are called nephews and nieces, and it is only by courtesy that the children of a husband's or wife's brothers and sisters are so called; just as it is in relation to a husband's or wife's father and mother.   On a strict interpretation, therefore, the bequest of this testatrix to all her nephews and nieces, excludes, or rather does not include, the nephews and nieces of her late husband.   By itself, the clause is without any difficulty.

The case, therefore, starts very clearly against the nephews and nieces of the husband, and puts upon them the proof that the testatrix used the words, not in their strict and more proper, but in their courtesy sense, a burden which is not inconsiderably increased by the legal and common presumption that exists in favour of the members of the legal and usual line of descent, and by the uncertainty into which we fall if we adopt the courtesy meaning of the words nephews and nieces.

Adopting this meaning, we should bring, not only the husband's nephews and nieces, but their wives and husbands also, into the class of her nephews and nieces, and of course we should include the husbands and wives of her true nephews and nieces.   This would enlarge two of her classes of legatees much beyond what is claimed.   Yet her courtesy use, in the will, of the terms nephews and nieces, would, if followed, lead us thus far.

Of course, therefore, we cannot rely on her occasional courtesy use of the terms as a ground for altering or departing from their true meaning in the chief bequest of her will.   This courtesy use in no instance misleads us, for it is always accompanied by a name or description that makes the individualization complete; and this very fact may have prevented her from observing that she was using the terms improperly.

But because she makes a bequest to her husband's nephews and nieces, and calls them hers, it is argued that this shows that she meant to include them in the phrase, "all my nephews and nieces." Yet to us it seems plain that this clause was, in her mind, placed in contrast with that of "all my nephews and nieces on the Paul (her husband's) side," and that she meant two separate and distinct classes.

And her will is well framed in order to mark this distinction.

[Green's Appeal.—Satterthwaite's Appeal.]

The first part of her will relates to a fund belonging to her in the hands of her late husband's executors; and all this, by two special bequests and one residuary and general one, she gives to her nephews and nieces on the Paul side. All the rest of the will relates to the rest of her property, furniture, plate, clothing, money, &c., which, by eleven special bequests and one residuary and general one, she gives to her brother, sisters, nephews, and nieces on her own side. We should distort the well-defined frame and studied plan of the will, if we should include the nephews and nieces of her late husband in this last residuary clause.

> February 3d 1862. This cause having been fully argued and considered, the decree of the Orphans' Court is reversed, and it is now here ordered and decreed that the sum for distribution be distributed in equal shares among the proper nephews and nieces of the testatrix, Mrs. Mary Paul, who are named in the record, allowing to each $261.20; and that the sum of $2000, appropriated to Keziah Foulke, be paid to her; and that the appellees pay the costs, and the record is remitted, &c.