## Appel et al. *versus* Byers et al.

A testator devised property to his nephew A. B., and died, leaving two nephews of that name—one legitimate, the other illegitimate. *Held,* that parol evidence was inadmissible to show that testator intended his illegitimate and not his legitimate nephew to be the object of his bounty.

|     |     |
| --- | --- |
| 98  | 479 |
| 187 | 121 |
| 98  | 479 |
| 201 | 204 |
| 98  | 479 |
| d 26 SC | 450 |
| 98  | 479 |
| 213 | 566 |
| 98  | 479 |
| f37SC | 319 |

October 6th 1881. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent,

ERROR to the Common Pleas No. 2, of *Allegheny county:* Of October and November Term 1881, No. 130.

This was an action of ejectment by Philip Byers against Tobias Appel for a tract of land. On petition the landlord of the defendant, who was also named Philip Byers, was admitted to defend. Subsequently, the death of the plaintiff being suggested of record, his heirs were substituted as plaintiffs.

Both plaintiffs and defendants claimed title under the will of one Peter Byers, who had died seised of the land in controversy. Said will provided, inter alia, as follows:

" I will, devise, and bequeath to my wife Margaret, all my estate, be same real or personal, and wheresoever situated during her natural lifetime. It is my will, and I hereby devise that my nephew, Philip Byers, shall have and hold, after the death of my wife, all my real and personal estate."

At the time of testator's death two persons were living known as Philip Byers; one was the father of plaintiffs, the other was the defendant.

Testator's widow died in 1880 seised of the land in controversy. Upon her death defendant entered and leased to Appel, whereupon the present suit was brought.

On the trial the jury returned the following special verdict:

We find that the testator, Peter Byers, deceased, died leaving two nephews, one Philip, the son of Martin (legitimate); another, Philip, the son of Louis (illegitimate).

We find that the nephew intended by the testator to inherit was Philip, the illegitimate nephew, the son of Louis, and this from evidence aliunde the will and not from the will itself.

We therefore find for the plaintiffs, the heirs-at-law of Philip the illegitimate, the son of Louis, with six cents damages

[Appel *v.* Byers.]

and costs of suit, subject to the opinion of the court upon the question of law, whether under the law and the evidence, there can be a recovery in favor of the illegitimate and against the legitimate nephew Philip, and if the court should be of opinion that there can be no such recovery at all, judgment to be entered for defendants, non obstante veredicto.

The Court (KIRKPATRICK, J.) subsequently entered judgment on this special verdict for plaintiffs, whereupon defendants took this writ, assigning for error the entry of judgment for plaintiffs on the special verdict.

*Miller* (with whom was *McBride* and *Goehring*), for the plaintiffs in error.—The single question is, was it competent for the jury upon evidence dehors the will to find against the legitimate nephew in favor of the illegitimate? The following authorities are clear to the effect that it was not competent: Wigram on Wills, page 99; In re Ayles Trusts, L. R. 1 Ch. Div. 282; Ellis *v.* Huston, L. R. 10 Ch. Div. 236; Tucker *v.* Seaman's Aid Society, 7 Metc. 188. The cases in Pennsylvania upon analogous points are to a similar effect: Trustees *v.* Sturgeon, 9 Barr 322; Lewis *v.* Fisher, 2 Yeates 196; Schafer *v.* Ewen, 4 P. F. Smith 304; Green's Appeal, 6 Wright 25; Johnston's Appeal, 3 W. N. C. 52.

*Walter G. Crawford,* for the defendants in error.—The testator used a name in designating the object of his bounty, applicable to two separate persons. None of the authorities cited by plaintiffs in error are opposed to the admission of parol evidence in such case to show which of these two the testator meant. The law is clear that parol evidence is always admissible to explain a latent ambiguity in a will.

Mr. Justice MERCUR delivered the opinion of the court, November 7th 1881.

Each party claims title to the land in question, under the same clause in the will of Peter Byers. He therein declares " I hereby devise that my nephew Philip Byers shall have and hold, after the death of my wife, all my real and personal estate."

The jury returned a special verdict wherein they found " that the testator Peter Byers, died leaving two nephews, one Philip, the son of Martin, legitimate: another Philip, the son of Louis, illegitimate." Also that the nephew intended by the testator to inherit, was Philip the illegitimate nephew; the son of Louis, and this from evidence aliunde the will and not from the will itself." Thereupon the court entered judgment in

favor of the heirs of Philip the illegitimate. This presents the main cause of complaint.

Looking at the language of the will we see it is clear and unambiguous as to the property devised and the object of the testator's bounty. That object is his nephew Philip Byers.

A bastard, at common law, is nullius filius. As he is the son of no one it is difficult to see how he can be the nephew of any one. If Philip the son of Louis was not the lawful child of a brother or sister of the testator, he could not be a lawful nephew of the latter. The question then is, when Philip the son of Martin clearly and in all respects satisfies the terms of the will, may it be shown by other evidence, that not he, but another person, was the one intended by the testator?

Philip the son of Martin was lawfully the nephew of the testator; Philip the son of Louis was not such a nephew. This is not the case of a question between two legal nephews of the same name, or of names in some respects different. Nor is it a case where the name is not accurately expressed in the will.

A gift to children means legitimate children only, unless it appears from the context or from circumstances, that illegitimate children must have been intended: Hawkins on Wills, 80. The same rule applies to gifts to sons, issue and terms of relationship generally. *Id.*

In Cartwright v. Vawdry, 5 Ves. 530, the testator left his property to his children equally. He had four daughters, and it was not known that one of them was illegitimate. She lived with him just as his other daughters. He treated her in all respects like the others, and intended that she should take with them, yet it was held she could not take—the lord chancellor declaring " it is impossible in a court of justice, to hold that an illegitimate child can take equally with lawful children upon a devise to children."

A man who had two illegitimate children by a certain woman married her, and the day after his marriage made a will in which, after leaving her his real and personal estate for life, he said " I leave her at liberty to direct the disposal of the property amongst our children by will at her death in such manner as she shall see fit, and should she make no will, I desire that the property existing at her death shall be divided, as far as it may be practicable to do so, equally between my children by her." The testator had no children born to him after this marriage: but lived for some time and always treated the two illegitimate children as his own children: yet it was held the testator died intestate as to the real and personal estate, beyond the interest given to the widow for her life: Dorin v. Dorin, Law Rep. 7 H. L. 568. It was there held that the word " chil-

[Appel *v.* Byers.]

dren" in a will means prima facie, "legitimate children" as much so as if the word legitimate had been introduced before it.

In Ellis *v.* Houstoun, 10 Law Rep. Chanc. Div. 236, the testatrix gave a sum in stocks to trustees upon trust to pay the dividends to her brother Charles Ellis and his wife Elizabeth for their lives and after the death of the survivor, the capital to be divided between all and every the children of her brother who should then be living, and the issue of such as shall then be dead. The brother had three children by his first wife; two children by his second wife Elizabeth before marriage, and one child after marriage. The fact that these two children were illegitimate was well known to the testatrix. She promised her brother if he married Elizabeth, she would provide for all his children by her; and thereupon the marriage took place. Thenceforth the testatrix continued on intimate and affectionate terms with the two illegitimate children, in all respects treating them as her nephews. Prior to the execution of her will she told them she would provide for them therein, and after its execution she told them she had so provided, and had made no distinction between them and their brothers and sisters. Still further, when she made her will she gave instructions to that effect and understood the language used was sufficient to identify the two illegitimate children and to include them among the children of Charles and Elizabeth Ellis. Yet it was held that the illegitimate children must be excluded from the bequest; that the words of the will being distinct, no extrinsic evidence could be received to show what the intention of the testatrix was; the vice chancellor saying: "I believe the law is firmly settled that where you have a bequest of property to a class of persons — children, nephews or nieces or any class you like—and you find in the class designated legitimate members, you can never admit illegitimate persons to share with them." This case, decided only three years ago, but ruled on many previous authorities, shows the settled law in England. The fact that in Pennsylvania, the subsequent marriage and cohabitation of the father and mother of an illegitimate child or children, legitimates it or them under the statute, does not impair the force of the rule excluding illegitimate children. Here, after marriage, such children born before, take not as illegitimate children; but, having the legal taint removed, they take as if "born during the wedlock of their parents."

No American authority was cited, which maintains the right of illegitimate persons to share with those who are legitimate when the latter are found, and strictly and fully answer the description in the written will.

[Appel v. Byers.]

Without regard to illegitimacy, the better and more authoritative rule is, that the intention of the testator, as expressed in the will, must govern in its construction.

If, however, there is a mistake in the description so that no one corresponds to it in all respects ; but some one does in many particulars; and no other does who can be intended, such person will take.   Or if the will be plain and clear on its face, and only becomes doubtful when applied to the subject matter, extrinsic evidence of the intention of the testator may be received.   Unless there be some ambiguity or obscurity on the face of the will or difficulty in finding the person or object to which it applies, extrinsic evidence should not be received to divert the will from the intention therein expressed.   In Tucker and others, Executors, v. Seamen's Aid Society, 7 Metcalf 188, the testator gave a legacy to " the Seamen's Aid Society in the city of Boston" and "The Seamen's Friend Society" claimed the legacy.   The latter offered to prove that the testator had no knowledge of the existence of the society named in the will; that he did know of the other society ; was deeply interested in its objects ; had contributed to its funds, and had frequently expressed a determination to give it a legacy ; that he directed the scrivener who wrote his will, to insert the legacy as made to said society ; but the scrivener, not knowing the existence of the society, told the testator the name of the society was " the Seamen's Aid Society," and the testator thereupon consented to have that name inserted.   This evidence was held inadmissible, and that the society named and described in the will was entitled to the legacy.

It is true in Powell v. Biddle, 2 Dall. 70, tried in the Common Pleas of Philadelphia in 1790, it was held that extrinsic evidence was admissible to award the legacy contrary to the express designation of the will, although the person accurately described therein, existed.   No question of illegitimacy arose in that case.   The case is without authority to control us, and I do not find the principle there declared, recognized by a higher court as a correct exposition of the law.   On the contrary, in Wusthoff v. Dracourt, 3 Watts 240, the question of admitting such evidence is discussed by Mr. Justice ROGERS.   After declaring that courts of law have always leaned against parol evidence to explain the intention of the testator, and that it can be admitted only where the ambiguity arises from extrinsic circumstances, so that the evidence is admitted from necessity, he proceeds to say, " The modern doctrine is, that where a subject exists which satisfies the terms of the will, and to which they are perfectly applicable, there is no latent ambiguity.   Evidence is only ad-

[Appel *v.* Byers.]

mitted dehors the will from necessity to explain that which would otherwise have no operation."

If the rule were held otherwise a person could feel no security in making a will. His intention, clearly expressed in writing, and the object of his bounty found, in all respects answering the description, might be defeated, and the statute relating to wills be made practically inoperative. If the language of this will applied to two legitimate nephews, so that either could take, but for the existence and claim of the other, then parol evidence would be admissible to prove which was intended.

In the present case there is neither patent nor latent ambiguity. The legitimate nephew precisely and in every respect answers the designation and description of the will; the other fails in law, to be a nephew.

It was alleged on the argument that the legitimate nephew was in truth named Philip A. Byers, although not generally so called, and therefore did not precisely answer the description in the will. A sufficient answer to this is, the special verdict finds no such fact. It declares there are two Philip Byers, one legitimate, the other illegitimate. Whatever is not found in a special verdict is to be considered as not existing. The verdict cannot be aided by extrinsic facts, even if they appear on the record: Vansyckel *v.* Stewart, 27 P. F. Smith 124. The court must declare the law on the facts found alone. They must be self-sustaining, and cannot be aided by any outside support.

This verdict shows that Philip Byers, the legitimate nephew of the testator, fully satisfies all the terms of the will. To him they are perfectly and solely applicable. Being thus distinctly and accurately described, there is no ambiguity to be explained. There is no necessity to go beyond him to give full effect to the will. To do so would not be to solve doubts or explain any obscurity; but to create them where none existed before. Under the facts found, the learned judge erred in entering judgment in favor of the heirs of the illegitimate person on the question of law reserved.

> Judgment reversed, and now judgment in favor of the defendants below (plaintiffs in error), non obstante veredicto.