Estate of William Root, deceased.    Appeal of William Root.

*Will—Ambiguity—Similarity of names—Legacy.*

Testator gave a legacy as follows: " Unto my nephew, William Root." Testator had a blood nephew, William Root, son of a brother; there was also a William Root, a nephew of his wife, but not of kin to the testator. Each claimed the legacy. *Held*, (1) that there was no such ambiguity on the face of the will as to call for parol testimony to make clear the intention of the testator; (2) that the nephew by blood was entitled to the legacy.

Argued April 1, 1898. Appeal, No. 432, Jan. T., 1897, by William Root, from decree of O. C. Phila. Co., Jan. T., 1883, No. 94, dismissing exceptions to readjudication. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to readjudication.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to readjudication.

*J. Howard Gendell*, with him *Wm. T. Aldrich*, for appellant. —It is, in this state, well settled that where there is a person of

the blood of the testator who corresponds to the description, it is not permitted to prove either that an illegitimate relation or one connected by marriage is meant: Appel v. Byers, 98 Pa. 479; Lewis v. Fisher, 2 Yeates, 196; Green's App., 42 Pa. 25; Johnson's App., 3 W. N. C. 52; Tucker v. Seaman's Society, 7 Metcalf, 188; Comfort v. Mather, 2 W. & S. 450; Sword v. Adams, 3 Yeates, 34; Woodman v. Good, 6 W. & S. 169; Coale v. Smith, 4 Pa. 376; Wusthoff v. Dracourt, 3 Watts, 240.

*David Wallerstein*, with him *William Henry Fox*, for appellee, cited Falkner v. Butler, 1 Ambler, 513; Shelley v. Bryer, Jacob's Ch. R. 207; Smith v. Lidiard, 3 K. & J. 252; Thompson v. Robinson, 27 Beav. 486; Frogley v. Phillips, 30 Beav. 168; Weeds v. Bristow, L. R. 2 Eq. Cases, 333; In re Blower's Trusts, L. R. 6 Ch. App. 351; Wells v. Wells, L. R. 18 Eq. Cases, 504; Merrill v. Morton, L. R. 17 Ch. Div. 382; Wilks v. Bannister, L. R. 30 Ch. Div. 512; In re Jodrell, L. R. 44 Ch. Div. 590.

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

The question for consideration is as to the identity of a legatee under the decedent's will. The testator died October 23, 1882, having executed his will on October 11 of same month. By the will, he gave to his wife the entire income of his estate during life, and at her death distributed the principal among relatives of himself and wife, and also made bequests for charitable and religious purposes. The widow died April 28, 1895, and the estate is now for distribution. In the fourth item of his will the testator says: "And from and immediately after the decease of my said dear wife, I do give, devise and bequeath as follows, to wit: unto my nephew, William Root, the legacy or sum of one thousand dollars." To all the legatees he gave an equal share in his residuary estate; this, added to the $1,000, made William Root's share about $2,000. On distribution before auditing Judge HANNA the only question raised was, as to the William Root legacy. The testator had a blood nephew, William Root, son of his brother, Bartholomew Root; there was also a William Root, a nephew of his wife, but not of kin to the testator. Each claimed the legacy. The auditing judge held that there was no ambiguity in the will calling for the intro-

duction of parol testimony; that the description of the legatee, "my nephew, William Root," fitted exactly his nephew by blood; therefore he awarded to him the legacy.   On exceptions before the court the decision was not concurred in, and the adjudication was referred back to the auditing judge, that parol testimony might be taken as to which nephew was intended by testator.   After hearing quite a number of witnesses as to the degree of intimacy between the testator and the two nephews; that he showed more affection for his wife's nephew than his own; that he was not on good terms with his own nephew's father, and that he frequently expressed an intention to favor his wife's nephew, the auditing judge concluded, from the weight of the evidence, testator intended his wife's nephew as the legatee, and so awarded.   This adjudication was confirmed by the court, and we have this appeal by William Root, testator's own nephew.

Is there any ambiguity in this will which would warrant the introduction of parol evidence to identify one of the legatees? The words are: "To my nephew, William Root."   There is a person answering this description exactly, the son of his brother Bartholomew.   The gist of the decision is that, to relieve the will of ambiguity, the testator, instead of saying, "unto my nephew William Root," should have said, "unto my nephew, William Root, not my wife's nephew, William Root, the legacy of one thousand dollars."   But, as it stands, the negative is necessarily implied; why by additional words express an inevitable implication?   When he accurately described the only legatee who could take under that description, why should he by negative words exclude one who was not described?   Why, from the will alone, should we suppose that when he said "my nephew" he may have meant some other person's nephew. There is, then, no ambiguity arising on the face of the will calling for parol testimony to make clear the intention.

A doubt as to the intention is raised by evidence outside the will, but not by the will itself.   We can make a will for the testator by ascertaining from witnesses that his wife had a nephew of the same name who, from his greater intimacy with and kindness to his aunt's husband, was more deserving of the legacy than the blood nephew, and therefore, according to our notions, ought to have it; in other words, we create a doubt

where by the will the intention is beyond doubt. The witnesses called are the neighbors of the testator. It is by no means rare that the neighbors and friends of a testator think they could have made a better will for him than he made himself; but the property was his to dispose of, not theirs, nor is it ours, when his intention was plainly expressed.

It is seldom that the authorities on a question are so many and pointed as on this one. A nephew, according to all the lexicographers, is the son of one's brother or sister; sometimes the word includes grandnephew. In Appel v. Byers, 98 Pa. 479, the words of the will were: "It is my will and I hereby devise that my nephew, Phillip Byers, shall have and hold, after the death of my wife, all my real and personal estate." At the death of testator, two nephews known by that name made claim; one, however, was illegitimate. The question as to which was intended was submitted to a jury on evidence dehors the will; they found the one intended was the illegitimate one, and the court entered judgment in his favor. On appeal to this Court the judgment was reversed, on the ground that the words, "my nephew, Phillip Byers," meant his legitimate nephew, because, without further description, they applied to him and to no other. It was further held, following Wusthoff v. Dracourt, 3 W. 240, that "The modern doctrine is that where a subject exists which satisfies the terms of the will, and to which they are perfectly applicable, there is no latent ambiguity. Evidence is only admitted dehors the will from necessity, to explain that which otherwise would have no operation. If the rule were held otherwise a person could feel no security in making a will. His intention, clearly expressed in writing, and the object of his bounty found, in all respects answering the description, might be defeated, and the statute relating to wills be made practically inoperative." The doctrine referred to as modern in the opinion is a quotation from Wusthoff v. Dracourt, supra, decided in 1834. While the appellation, "modern," may have been correct at that date, yet after being followed for sixty-five years it may now be termed old. In Green's Appeal, 42 Pa. 25, the bequest was: "And as regards the rest, residue and remainder of my moneyed estate, I give and devise the same to all my nephews and nieces, share and share alike." The testatrix was childless; her husband, from whom came

the larger part of her estate, had died years before; she had nephews and nieces of her own, and there were nephews and nieces of her husband; in the former part of the will she had given several special legacies to her husband's nephews and nieces by the words, "my nephew" or "my niece," but in no case was there any uncertainty as to the one designated. There were circumstances, apart from the will, which pointed to an intention to include in the residuary clause all the nephews and nieces of both husband and wife. The court below so held, and made distribution accordingly. On appeal, this Court reversed the decree, holding that the residuary clause meant just what it said, her own nephews and nieces, and not those of her husband.

In the will before us, the testator evidently understood the distinction between the courtesy title, as it is termed in Green's Appeal, supra, and the proper application of it to his blood relations. In no less than seven of the legacies he uses such words as my wife's sister, my wife's cousin, my brother-in-law. In only two instances does he fail to distinguish his wife's relatives by the proper term, and in those there is no similarity in name which could possibly create doubt. He knew there were two nephews of the same name, one his, and one his wife's. He was well acquainted with both; nevertheless, he uses words designating as the object of his bounty his own nephew, and by those very words, necessarily, excludes his wife's.

The only case cited by the court below to sustain its ruling is, "In re Ashton, L. R. Probate Div. [1892] p. 83," an English case. The testator appointed as one of his executors, "my nephew, George Ashton." There were two nephews of that name, one legitimate and the other illegitimate; the latter was permitted to prove that he was the one intended, and letters were issued to him. We do not adopt this as authority; it in effect overrules our whole line of authorities in analogous cases, and is in direct conflict with Appel v. Byers, supra, in which the facts were almost precisely the same. The English case, in substance, adopts the doctrine of Powell v. Biddle, 2 Dallas, 70, a case decided in 1790. The testator made a bequest of one hundred pounds to Samuel Powell; there was a half brother of Samuel, son of testator's daughter, named William, who claimed the bequest was intended for him, and the court

permitted this to be proved by evidence outside the will, and the legacy was awarded to William. This case was expressly disregarded as authority in Appel v. Byers, supra, and it was there said, it had been in effect overruled by Wusthoff v. Dracourt, supra, decided in 1834.

We think the opinion of the learned auditing judge, in his first adjudication, was a correct exposition of the law, and ought to have been sustained. The decree of the court below is therefore reversed, and it is directed that the legacy in contention be awarded to William Root, son of testator's brother, Bartholomew Root. Costs of this appeal to be paid by appellee.