RODARMEL ET AL. *v.* GWINNUP ET AL.

[No. 13,921.   Filed November 21, 1930.   Rehearing denied February 18, 1931.   Transfer denied July 17, 1931.]

*Alvin Padgett, Arthur Rogers, George A. Faith, Frank E. Gilkison, Funkhouser, Funkhouser & Markel, Charles C. Gardiner, C. K. Tharp, John F. O'Brian, Ezra Mattingly* and *Stephen E. Myers,* for appellants.

*Josiah G. Allen, Elmer E. Hastings, Arthur W. Allen, John S. Hastings, J. W. Ogdon, T. D. Slimp, Flavian A. Seal, William D. Curll, Turner, Seaberry & Springer* and *Miller & Miller,* for appellees.

ENLOE, J.—April 2, 1926, William R. Meredith, a resident of Daviess County, Indiana, died testate, and possessed of an estate of more than $1,000,000. By the fourth item of his will, which was duly probated, he provided: "The balance of my property of every kind, character and description, real and personal, I will and bequeath in fee simple to my first cousins and my second cousins living at my death. Hereby willing to each of my first cousins share and share alike twice the amount that I hereby will and bequeath to each of my second cousins, share and share alike. The intent being to will and bequeath to each of my first cousins living at my death, double the amount hereby willed and bequeathed to each of my second cousins living at my death."

The testator left surviving him 15 first cousins and 136 second cousins. These kinfolk have been designated, according to ancestry, as "the Meredith group," "the Ruggles group," "the Williams group," "the Springer group" and "the Rainey group." The appellants herein are the Meredith group.

An action was brought for the partitioning of the lands of the testator, and the question for decision arose upon such trial. It is the contention of the appellants that

when the testator used the expression, "my first cousins and my second cousins," as used in Item 4 of his will, in designating the beneficiaries thereunder, that he had in mind only the Meredith group of heirs, and intended that this group, and this group only, should be the beneficiaries under said will.

The appellants proceeded upon the theory that there was an ambiguity in the said will, and they offered, and the court heard, testimony relating to the supposed belief and intention of said testator, at the time he made said will. Also, the court found (finding 145) that: "William R. Meredith, intended and believed, at the time of the execution of his will that the children of the brother and sister of his father, William S. Meredith, who were living at his death, were the persons who would be the devisees and legatees under the will, as the ones included in the language, 'my first cousins living at my death,' that the testator, William R. Meredith, intended and believed, at the time of the execution of his will, that the children living at his death, who were the children of the children of the brother and sister of his father, William S. Meredith, were the persons who would be the devisees and legatees under his will as the persons included in the language, 'my second cousins living at my death.'"

In the case of *Aspden's Estate* (1853), 2 Wall. Jr. 368, 438, 439, Fed. Cas. No. 589, the testator gave his estate to "*My* heir at law." In passing upon the question presented, the court, speaking by Mr. Justice Grier, said that the difficulty presented was not one arising upon a *latent* ambiguity, and, continuing, the court said: "If A. B. be the person described by the will, it would be a perversion of law to suffer parol testimony to be admitted, to prove that the testator meant C. D. The statute of frauds and perjuries would be annulled." In the same case, it was also said: "The will having

declared the clear, paramount and ruling intention of the testator that a person should take, who, at the time of his death, should answer to a certain description; the fact that the testator never knew, or always labored under a mistake as to the person who would probably answer to that description at the time of his death, would not affect the construction of his will."

In 2 Schouler, Wills (6th ed.) p. 975, §859, it is said: "It is the intention of the testator as expressed in his own will which governs and this paramount intention must be discerned through the words of the will itself, as applied to the subject-matter and the surrounding circumstances. In other words, the plain and unambiguous words of the will must prevail and cannot be controlled or qualified by any conjectural or doubtful constructions growing out of the situation, circumstances or condition of the testator, his property or the natural objects of his bounty. . . . The real inquiry is not what the testator intended to express but what the words used do express, the object of construction being to ascertain the intention *expressed in the will*, his intention existing in his mind not controlling, and it is often said that the intention must be ascertained from the four corners of the will, or that if intent can be ascertained from the four corners of the will alone, the inquiry must be confined to that." (Our italics.)

In I Page, Wills (2nd ed.) p. 1370,§809, it is said: "In construing a will, it will be presumed that the testator understood and intended the provisions thereof. As the courts are careful to discover and enforce testator's intention, but not to make a new will for testator, it follows that they constantly refuse to ascertain the testator's intention except from the words which he used in his will, together with such extrinsic evidence as is admissable. The question always before the mind of the court is, not what should testator have meant to do or what words did he mean to use, but *what is the reasonable*

*meaning of the words which he has actually used.''* (Our italics.) In the same section, the author also says: "The court can not begin by inferring testator's intention, and then construe the will so as to give effect to this intention, however probable it may be, nor can it rewrite the will, in whole or in part, to conform to such presumed intention."

In *Biggs* v. *McCarty* (1882), 86 Ind. 352, 44 Am. Rep. 320, it was said: "We admit that, as contended by the appellants, the intention of the testator, as gathered from the whole will, should, so far as it can, consistently with the rules of law, be enforced, and that it should guide the courts in the construction of the will; but, as will be seen by an examination of the cases referred to by the appellants, it is not always the presumed or actual intention of the testator, but, as contra-distinguished therefrom, his legal intention, that must be enforced."

In *Daugherty, Admr.,* v. *Rogers* (1889), 119 Ind. 254, 20 N. E. 779, 3 L. R. A. 847, the court, speaking by Mitchell, J., said: "It is settled beyond controversy that whatever method may be resorted to for the interpretation of a will, it must be applied solely with a view to arrive at the intention of the testator, as his intention may be gathered from the language found in the instrument itself. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution (citing authorities). The maintenance of this rule in its integrity, so that the language found in the instrument shall in truth be the legal declaration of the testator's intentions concerning the disposition to be made of his property after his death, is a matter of transcendent importance, and, as will be seen from the cases cited, in no jurisdiction has the doctrine which denies the right to add anything to a will by parol

been adhered to more steadily than by this court."
See, also, *Hedges* v. *Payne* (1926), 85 Ind. App. 394, 154
N. E. 293; *Wallace* v. *Cutsinger* (1917), 66 Ind. App.
185, 115 N. E. 789; *Lee* v. *Lee* (1910), 45 Ind. App. 645,
91 N. E. 507; *Crocker* v. *Crocker* (1918), 230 Mass. 478,
120 N. E. 110, 5 A. L. R. 1617.

In *Graves* v. *Rose* (1910), 246 Ill. 76, 92 N. E. 601,
30 L. R. A. (N. S.) 303, it was said: "While the object
of construction is to ascertain the intention of the testa-
tor, it must be an intention *expressed in the will* and it
must be determined from the language used. A will
cannot be reformed to conform to any intention of the
testator not expressed in it, no matter how clearly a
different intention may be proved by evidence of ex-
trinsic facts. If that were not so, all wills would be
subject to proof of mistake and of a different intention
from that expressed, so that, in fact, property would
pass without a will in writing which the law declares
shall not pass except by a written will."

As stated by appellants, in their brief herein, it is their
contention that when the testator, in his will, used the
words "my first cousins," he meant, intended and
had reference exclusively to the children of the
brothers and sisters of his father; and that, when
testator used the words—"my second cousins," he
meant, intended and had reference to the children of the
children of the brothers and sisters of his father, William
S. Meredith, and that, therefore, *the said will is ambigu-
ous*. We cannot concur in this contention. The will
named and designated two certain and definite classes,
the first cousins and the second cousins of testator who
should be alive at the time of his death. There is cer-
tainly no ambiguity in this. If the testator had a mis-
taken idea as to what persons *would come within* the
designated classes, that fact does not make the will

ambiguous, and, if there are persons who fill the description named—come within the designated class—such persons will take under the will. Had there been no persons of the class or classes named in the will at the time of the execution thereof, and also no person or persons of the class or classes named at the time of the death of the testator, but if there had been persons living at the time of the execution of the will of whom the testator had knowledge, and of whom he spoke as being his relatives—his cousins— though in reality they were not such, then it might be said that there was an ambiguity in the will, *as to the persons intended as beneficiaries under such will,* and authorities cited by counsel for appellant would be in point, but we think they are not applicable to or controlling in this case.

It is said that the court erred in its conclusion of law, because the court found that the testator believed certain persons, and they only, would be his beneficiaries under said will. Finding 145, *supra.* It is true that the court made such finding, but that finding was of no controlling influence; it was an immaterial finding. In *Jones* v. *Bennett* (1916), 78 N. H. 224, 99 Atl. 18, the court said: "It will be necessary, therefore, to consider the nephews' and nieces' exception to the court's refusal to consider this evidence on the issue of Mrs. Clark's intention. If it is permissible to show that she omitted the names of the nephews and nieces by mistake, or that she supposed they were Hiram's heirs, it is because that fact is a circumstance surrounding the making of the will which it is proper for the court to consider in ascertaining to whom she intended to give this property; consequently the test to determine whether the court erred in excluding this evidence in so far as it tended to prove that Mrs. Clark intended to give this property to the nephews and nieces is to inquire whether, if that were found to be the fact from extrinsic evidence,

the court could consider it in construing the will. It is true, as the nephews and nieces contend, that Mrs. Clark's intention is not to be ascertained by simply giving the words she used their ordinary meaning, regardless of the circumstances under which they were used (citing authority); but it is equally true that her intention must be gathered from the words she used, and not from her declarations made before, at the time, or after the will was made (citing authority); for it is not permissible to ascertain her intention by extrinsic evidence and use it to contradict the words of the will (citing authority). In other words, construing a will is not ascertaining the testator's intention as an independent fact and reading it into the will, but ascertaining it from the will itself, or from the words of the will, by reading them in the light of the surrounding circumstances." If the rule as above announced were not the law, then, under the guise of "construing a will," it would be possible for the *courts* to rewrite wills and utterly change the provisions thereof, and thus render the statute which requires wills to be in writing, of no force and effect.

In the case at bar, we hold that the will in question is not ambiguous, and, as there are persons, definitely ascertained, who fall within the classes mentioned and fixed as legatees thereunder, the court did not err in its conclusions of law.

The judgment is affirmed. Neal, C. J., Lockyear, P. J., and Remy, Nichols and McMahan, JJ., concur.