Aultman Binger et al., Plaintiffs-Appellants, v. Kate
Ackerman et al., Defendants-Appellees.

**Gen. No. 10,123.**

Third District.
October 14, 1957.
Released for publication October 30, 1957.

Chapin & Chapin and Clifford M. Blunk, of Springfield, for plaintiffs-appellants.

Robinson, Foreman, Rammelkamp, Bradney & Hall, of Jacksonville, and Samuelson & Samuelson, of Franklin, Nebraska, for defendants-appellees.

JUDGE ROETH delivered the opinion of the court.

Plaintiffs, appellants here, filed their amended complaint, seeking the construction of the last will and testament of Harman Aden, also known as Harman Meyer, deceased. On defendants' motion the amended complaint was dismissed for want of equity and plaintiffs prosecute this appeal.

The mother of the testator was twice married and the testator was the only child of her first marriage. The father of the testator had two brothers both now dead. One of these brothers left no known descendants. Descendants of the other are two grandchildren who are still living and who bear the legal relationship to the testator of paternal first cousins once removed. The mother of the testator had eight brothers and sisters. Of their respective marriages, there were five children living at the testator's death and these five bear the legal relationship to the testator of maternal first cousins. In addition there were several children

36

of these maternal first cousins living at testator's death who bear the legal relationship to the testator of first cousins once removed.

By her second marriage, testator's mother had two children, both of whom predeceased the testator. These children were never married. The testator's stepfather had five brothers and sisters. The plaintiffs are children of the respective marriages of these brothers and sisters and they bear no legal relationship to the testator.

The will, omitting the parts which are not material here, is as follows:

"9. I give and bequeath to my first cousin, Kate Ackerman, the sum of Six Thousand Dollars ($6,000.00). In the event that she should predecease me, then this legacy of Six Thousand Dollars ($6,000.00) shall go to her daughter, Grace Ackerman.

"10. I give and bequeath to my second cousin, Grace Bless, the sum of One Thousand Dollars ($1,000.00).

"11. I give and bequeath to my second cousin, Maggie Onken, the sum of Five Hundred Dollars ($500.00).

"12. I give and bequeath to Grace Ackerman, daughter of my first cousin, Kate Ackerman, the sum of Five Hundred Dollars ($500.00).

"13. I give and bequeath to William Aden, who is no relation to me, the sum of Twenty-five Dollars ($25.00).

"14. I give and bequeath to my first and second cousins, Mary Binger, Edward Wilken, Charles Boehm, Mrs. Henry Budke, John Coleman and Dora Browning, the sum of Ten Dollars ($10.00) each; and to Altman Binger the sum of Fifty Dollars ($50.00).

"15. I give and bequeath to George Vance and Bessie Vance the sum of Five Hundred Dollars ($500.00) to be shared by them, share and share alike.

"16. I give and bequeath to Mrs. Katie Nelssen, Marvin Nelssen, Melvin Nelssen, Vernie Nelssen and Mrs. Irene Nelssen Vobaril the sum of One Hundred Fifty Dollars ($150.00) each.

"17. I give and bequeath to my cousins, John Tobias, Henry Tobias, Jerry Tobias and Ben Tobias, all of whom reside in Franklin, Nebraska, the sum of One Hundred Fifty Dollars ($150.00) each.

"18. I give and bequeath to my cousin, Lizzie Luken, and to my second cousins, the children of Webkie Schroeder, the sum of One Hundred Dollars ($100.00) each.

"19. I give and bequeath to my cousins, Robert Bless, Harry Bless and Marshall Bless, the sum of Fifty Dollars ($50.00) each.

"20. In the event that any of the legatees or devisees, including my wife, heretofore mentioned in My Will shall predecease me, such legacies and devises to them shall lapse and become a part of my residuary estate, except where the bequest or legacy provides otherwise.

"21. The balance of the proceeds of the sale of my real estate, after the payment of claims, taxes thereon, legacies and expenses of administration, shall be equally divided among my first cousins living at the time of my decease."

It is conceded that the testator used the phrase "second cousins" in the commonly or popularly accepted sense, rather than in the legal sense of persons having a common great-grandfather or great-grandmother.

Thus Kate Ackerman, Lizzie Luken, John Tobias, Henry Tobias, Jerry Tobias and Ben Tobias, mentioned in clauses 9, 17 and 18 are maternal first cousins; Maggie Onken, referred to as a second cousin in clause 11 is a paternal first cousin once removed; Grace Bless referred to as a second cousin in clause

10 is a maternal first cousin once removed; Robert Bless, Harry Bless and Marshall Bless referred to as cousins in clause 19 are maternal first cousins once removed; the children of Webkie Schroeder referred to as second cousins in clause 18 are maternal first cousins once removed. As to clause 14 wherein the testator refers to those named as first and second cousins, Mary Binger, Edward Wilken, Charles Boehm, Dora Browning and Mrs. Henry Budke bear no legal relationship to the testator. The first five named above are children of the sisters of the second husband of testator's mother. Mrs. Henry Budke is a grandchild of one of the sisters of the second husband of testator's mother. These persons would therefore be first cousins and a first cousin once removed of testator's half-brother and half-sister but, as noted, bear no legal relationship to testator. Altman Binger referred to in clause 14 falls within the same category as Mary Binger and the other four above referred to. John Coleman referred to in clause 14 is a maternal first cousin once removed.

Thus it appears that with the exception of clause 14, and taking into consideration that the testator used the term "second cousins" in the common sense and not legal sense, wherever the descriptive word or words, "cousin," "first cousin" or "second cousin" are used they refer to named persons who are in fact full blood cousins. The controversy in this case revolves around the use of the phrase "my first cousins" in clause 14 to describe five persons who were not in fact legally related to the testator, when it is noted that the residuary clause (clause 21) leaves the residue to "my first cousins."

By the amended complaint the plaintiffs allege in substance that during his lifetime the testator called, considered and treated the first cousins of his half-brother and half-sister as first cousins to himself and

so regarded them; that the testator used the word "cousins" in his will not only to designate blood cousins but also cousins of his half-brother and half-sister; that by the use of the term "cousins" in clause 14 to describe persons not related to him, but who were legally cousins of his half-brother and half-sister, the testator established a particular meaning to the term as distinguished from the legal meaning; that there is a latent ambiguity in the will arising by virtue of clause 21 as to who shall be included in the class designated in clause 21 as "my first cousins," and that the will is in need of construction. The persons named in clause 14 are capable of identification and it is not claimed that this clause, standing alone, is ambiguous. Defendants assign a number of reasons for their motion to dismiss. They may all be reduced to the single contention that the will is clear and certain and that no ambiguity exists. This apparently was the basis for the trial court's action in sustaining the motion and dismissing the complaint.

 It is basic that a court of equity will not assume jurisdiction to construe a will which is neither ambiguous nor uncertain where there is no equitable estate to be protected or equitable right to be enforced. The court does not acquire jurisdiction to construe a will merely by allegations that a question requiring construction exists, where the record shows that there is no such question. A motion to dismiss may properly be filed to present this question. Carlberg v. State Sav. Bank & Trust Co., 312 Ill. 181, 143 N. E. 441; Bartlett v. Mutual Benefit Life Ins. Co., 358 Ill. 452, 193 N. E. 501; Peck v. Drennan, 411 Ill. 31, 103 N.E.2d 63.

The question for determination by this court on an appeal of this nature, is solely whether or not the principles of law governing the interpretation of this will are thoroughly established by the law. If they

40

are so established, and if, when those established principles are understood and applied to the will, the meaning is clear, there is no ambiguity and no question of construction remains for the court. Carlberg v. State Sav. Bank & Trust Co., supra; Mitchell v. Snyder, 402 Ill. 279, 83 N.E.2d 680.

In Jarman on Wills, Vol. 3, page 1631, in discussing the situation presented in the case at bar it is said:

"The difficulty in most of these cases arises from the fact that the testator has in one part of his will used a word importing relationship in an inaccurate sense, from which it may be argued that he uses the word in that sense throughout the will. Whether or not that argument is entitled to prevail depends on the particular language of the will, but the tendency of the Courts has been towards a strict construction; consequently if the testator gives legacies to persons who are nieces of his wife, describing them as 'my nieces,' and gives his residue to 'my nephews and nieces,' only his nephews and nieces by blood are entitled to share in the residue."

The precise question has arisen and been decided in a number of English cases. The leading case is In re Green; Bath v. Cannon, 1 Ch. 134, 8 B.R.C. 125, decided in 1914. There the testatrix appointed three persons as executors of her will describing them as her nephews. One was in fact her nephew and the other two were nephews of her first husband. The residue of her estate was given to "my nephews and nieces." The language of the court aptly demonstrates the similarity with the case at bar and the similarity of the contentions there made with those here made by counsel for plaintiffs. The court noted:

"It is argued, therefore, that as the word 'nephews' is used by the testatrix in a less accurate sense in the earlier part of the will, the words, 'nephews and nieces,' in the gift of residue must be given a similarly

41

inaccurate meaning so as to include nephews and nieces of the first husband as well as her own. It is also urged as an alternative by counsel representing the secondly and thirdly named trustees (nephews of first husband) that, even if all the nephews and nieces of the testatrix's husband cannot be included, at least these two trustees should be included as being expressly described as nephews."

In disposing of the issues the court said:

"Although a testator by using words in a particular sense may create his own dictionary, I am not prepared to say that the single use of a word inaccurately in one passage means that that word is used equally inaccurately when it occurs again later on. In the earlier part of the will the use of the word 'nephew' is only partly inaccurate, since the first named of the three trustees was the testatrix's own nephew, and it may be that this weakens the case for considering that the word was misused again in the later part of the will. On the other hand, there is some ground for saying that the coupling of the nephew by blood with the nephews by affinity strengthens the argument for holding that the testatrix intended to comprehend in the same language her own relatives and her relatives by affinity. On the whole I do not think there is here quite enough in the earlier misuse of the word to lead me to attribute the same extended meaning *to words otherwise clear in themselves.*" (emphasis supplied).

In deciding this case the court's attention was directed to a number of prior English cases all of which came to the same conclusion under similar facts. Such cases include Thompson v. Robinson, 27 Beav. 486; Re Cozens (1903) 1 Ch. 138; Smith v. Lidiard, 3 Kay & J. 252; Merrill v. Morton, 17 Ch. D 382; Wells v. Wells, 18 Eq. 504. In Smith v. Lidiard, supra, the testatrix gave legacies to "my niece Emile Andrews" and "my

42

niece Louisa Walters." These two legatees were children of a brother of her late husband and were not related by blood. The court first noted that in one case cited, a grand niece described as a niece came under the designation of nephews and nieces in the residuary clause but distinguished the question there presented with the one at bar with this observation:

"the testatrix had indicated, by her will, who they were that she conceived were related to her in that degree."

The court then said:

"That by no means goes the whole length of the argument in this case, which would introduce entire strangers in blood * * * to equal participation with the testatrix's own nephews and nieces. * * *
"Can it be safely inferred here, from the mere circumstance of some strangers in blood being described by terms of affection as the testatrix's own nieces, that it was her intention to let in all other strangers in blood, who stood in the same relationship to the husband as these persons? I think that I am not at liberty to let in a large class of persons, merely from the circumstance of her having selected some of the class as objects of her favour, and having bestowed on them, although her husband's nieces and not her own, the title of nieces."

The further question was raised in this case as to whether, all of the husband's nephews and nieces could share in the residuary gift, even though only two of them had been specifically named as legatees. On this question the court held:

"Here the testatrix has chosen to benefit particular persons, calling them her nieces, who are not any blood relations at all; and then she has made a general bequest to nephews and nieces, not confining it to those

43

named before (for no nephews had been named at all); and I cannot hold that under that general gift nephews and nieces of the husband can be included."

In passing, this case indirectly illustrates the manner in which the testator Harman Aden might have included the plaintiff legatees in the residuary clause namely by the use of the phrase "hereinbefore named" in conjunction with his language "my first cousins." Such was the basis for the holding in Seale-Hayne v. Jodrell, A.C. 304 (1891) relied upon by counsel for plaintiffs.

The American cases deciding this question are not numerous although they reach the same conclusion as the English cases. In Green's Appeal-Satterthwaite's Appeal, 42 Pa. 25, decided in 1862, the testatrix made two specific bequests to two persons designating them as "my nieces." They were, in fact, nieces of her husband. The residuary clause left the residue to "all my nephews and nieces." Following the principles laid down in the English cases it was held that the designation "my nieces" did not bring the two legatees under the residuary clause. This case was followed under an identical set of facts in Binkleys Estate, 93 Pa. Super. 1, and again as late as 1952 in In re Banks Estate, 61 Dauph. 471 (Pa. Orph).

In Schoen v. Siegmund, 119 N. J. Eq. 524, 183 Atl. 292, the case of In Green's Appeal-Satterthwaite's Appeal, supra, was quoted from at length with approval as was Smith v. Lidiard, supra.

Many cases may be found which hold that the phrase "all of my nephews and nieces" or corresponding phrases, standing alone, contemplate only nephews and nieces by consanguinity and do not include nephews and nieces by affinity even though in common parlance a husband's nephews and nieces are often referred to as her nephews and nieces by a wife and vice versa.

It is to be noted that the foregoing cases involve provisions in wills pertaining to nephews and nieces. No cases have been cited and our search has revealed none, where the enunciated principles have been applied to provisions involving first cousins by consanguinity and affinity. No good reason suggests itself, however, why the same principles would not apply.

Counsel for plaintiffs cite McClure's Estate, 72 Pa. Super. 550, Culver v. Union & New Haven Trust Co., 120 Conn. 97, 179 Atl. 487, In re Bannan's Estate, 147 Misc. 544 (N.Y.), 264 N.Y.S. 335, In re Taylor; Cloak v. Hammond, 34 L. R. Ch. Div. 255 (Eng.), Baldwin's Coex'rs v. Curry, 272 Ky. 827, 115 S.W.2d 333 and Coon v. McNelly, 254 Ill. 39, 98 N. E. 218, in support of their contentions. None of these cases are in conflict with the cases above referred and all can be distinguished.

McClure's Estate, supra, holds that first cousins once removed may share in a residuary bequest to first and second cousins primarily, as is conceded in the case at bar, because the term "second cousins," by common parlance and dictionary recognition, includes first cousins once removed. In Culver v. Union & New Haven Trust Co., supra, all parties agreed that first cousins once removed came within the phrase "second cousins" so there was no need of a decision on the point. In re Bannan's Estate, supra, involves an entirely different principle. There the testator gave specific legacies to five persons designating them as "second cousins." He also gave a legacy to "every other second cousin" surviving him. No second cousins survived the testator. All those specifically named were in fact, first cousins once removed. Here there were no members of the class who could take as second cousins. The court held that the words "second cousins" meant first cousins once removed, applying the common usage of the phrase and dictionary recog-

45

nition to such common usage. In, In re Taylor-Cloak v. Hammond, supra, the testator left the residue to "my cousins Mary Voy and Harriet Cloak." There were *two* Harriet Cloaks, one being the wife of a deceased cousin and the other being a first cousin who had married a man named Crane. Extrinsic evidence was permitted to resolve the question of who was intended and the court, on that evidence, resolved it in favor of the wife of her deceased cousin. This case proceeds on well established principles which have no bearing here. Coon v. McNelly, 254 Ill. 39, 98 N. E. 218, supra, is similar in principle to In re Bannan's Estate, supra, applying the rule that where there is a class gift and no members of the class who can come within the strict construction of the class phrase, extrinsic evidence is admissible to show the testator's intention. In the case of Baldwin Coex'rs v. Curry, supra, the testator gave a specific legacy to Lucinda Morrison, describing her in two separate places as "my niece." She was a niece by affinity. He also gave specific legacies to true nieces and nephews. The residue was left to "my nieces and nephews *named hereinbefore.*" (emphasis supplied). The niece by affinity was permitted to share in the residue because of the testator's language "named hereinbefore." This holding is in line with Seale-Hayne v. Jodrell (Eng.) A.C. 304, hereinbefore referred to. For comment on the distinguishing feature of this case see Jarman on Wills, Vol. 3, Page 1631.

In addition to the foregoing, certain general principles of law are well established. Where legatees are named as individuals and also described as a class, the class description is added by way of identification. Carter v. Carter, 234 Ill. 507, 85 N. E. 292. The words of class description are merely descriptive of the person intended. Applying this rule to the case at bar the misdescription of the class in clause 14 does not

create an ambiguity in clause 21 for the misdescription of plaintiff legatees in clause 14 does not in fact make them what they are not i.e. first cousins. Where there are in fact persons who come within the class designated in clause 21 as "my first cousins" no necessity arises to extend the phrase beyond its natural and legal import. Rodarmel v. Gwinnup, 92 Ind. App. 684, 173 N. E. 327. Also, where a testator uses words which have a well defined legal meaning, evidence of a special meaning which he attached to the words is inadmissible unless the will itself clearly shows that he used them with some special meaning. Gridley v. Gridley, 399 Ill. 215, 77 N.E.2d 146; Kramer v. Sangamon Loan & Trust Co., 293 Ill. 553, 127 N. E. 877. The phrase "my first cousins" has a definite legal meaning, namely, the children of an uncle or aunt. The cases so holding are collected in 99 A.L.R. 672. To these should be added Citizens Nat. Bank v. Phillips, 235 N. C. 494, 70 S.E.2d 509, and Bristol v. Mazza, 288 S.W.2d 564. Nor does the will in question come within the proviso above noted, for, as heretofore demonstrated, the inaccurate use of the phrase "my first cousins" in clause 14 cannot be said to show that the testator used this phrase with a special meaning.

We therefore conclude that the principles of law governing the interpretation of Harman Aden's will are definitely established and settled by the law. When properly applied, the will is clear and no ambiguity exists and consequently there was no need of construction by the trial court. The motion to dismiss was, therefore, properly sustained.

Accordingly the decree of the Circuit Court of Menard county will be affirmed.

Affirmed.

CARROLL, P. J. and REYNOLDS, J., concur.