Estate of Sarah R. Lamberton, Deceased.

Argued May 4, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige and Stadtfeld, JJ.

*A. R. Osmer,* and with him *N. F. Osmer,* for appellants.

*A. B. Johnson,* and with him *Edmond C. Breene* and *John L. Nesbit,* for appellees.

PER CURIAM, July 14, 1932:

Sarah R. Lamberton in her last will and testament inter alia provided:

"Third: I give and bequeath to my nephew Chess Lamberton, the one-fourth of my entire estate (except that portion thereof mentioned in the eighth paragraph hereof) to be his absolutely."

"Eleventh: Upon the death of the survivor of my said sisters, Hannah M. Raymond and Elizabeth Raymond, I direct that that portion of my estate from which they shall have been receiving the income in accordance with the provisions of paragraph ten hereof, shall be divided equally among such of my nephews and nieces as shall then be living, except my nephew Chess Lamberton, and my nephews and nieces, children of my sister Harriet R. Mitchell, mentioned in the twelfth paragraph hereof, who shall not participate therein, and subject to the qualification that my nephew Mark K. Raymond, son of my deceased brother George W. Raymond, shall receive but $2,500 and not participate equally with the others; and if any of my said nephews and nieces are then dead leaving lawful issue, that such issue shall receive the same share that his, her or their parents would have received under the provisions of this paragraph, if living."

Chess Lamberton was not her nephew, but sustained that relationship to her deceased husband. It is argued that her designation of him as such shows that the

testatrix when she mentions nephews and nieces means not only those who are blood relatives, but such as are the nieces and nephews of her deceased husband, and that the latter should participate in the division provided in the eleventh paragraph.

Judge PARKER, now of this court, who was President Judge of the orphans' court, filed an opinion in the matter, and we adopt the same as the opinion of this court; it reads as follows:

" 'In strict propriety, and in legal usage, it is only the children of brothers and sisters that are called nephews and nieces, and it is only by courtesy that the children of a husband's or wife's brothers and sisters are so called': Green's Appeal, 42 Pa. 25. 'It is seldom that the authorities on a question are so many and so pointed as on this one': Root's Appeal, 187 Pa. 118. William J. Lamberton preceded his wife in death by almost thirty years. Neither the testatrix nor her husband had any children but each had a large number of nephews and nieces. The evidence does not disclose the source of the estate ......

"Counsel for the exceptants concede that ordinarily 'nephews and nieces' as used in a will is confined to blood relations as opposed to those so designated by courtesy, but depend upon the reference in the third paragraph to Chess Lamberton as a nephew, and the exception referring to Chess Lamberton in the eleventh paragraph, as sufficient reasons for varying the usual definition. The reference in the third paragraph may be eliminated at once as it is clearly ruled by the cases of Green's Appeal, 42 Pa. 25, and Binckley's Estate, 93 Pa. Superior Ct. 1.

"Testimony was received by the auditor showing the relationship existing between Chess Lamberton and Sarah R. Lamberton. From this evidence it appeared that the mother of Chess Lamberton died when he was ten days old, and that Sarah R. Lamberton took him into her own family and treated him as a son until

he was ten or twelve years of age when he returned to his father's home, and that when Chess Lamberton arrived at years of discretion he became the confidential adviser of testatrix and managed all of her business for her, and that the relationship was very close. One of the exceptions is to the receipt of this evidence. We think it was clearly admissible for the purpose of showing the relationship that the parties bore to each other in order that the will might be interpreted in the light of those facts. It follows that it would be most natural for Mrs. Lamberton to refer to Chess Lamberton as her nephew although he was in fact the nephew of her husband. The close relationship was recognized in the will itself for one-fourth of the entire estate was given to Chess Lamberton. It would be natural in making a will for the testatrix to refer to him by the only designation that was suitable under the circumstances. The relationship having been very close she would hesitate about referring to him as the nephew of her husband. She having referred to him in the third paragraph as a nephew, and having evidently intended to leave all the balance of her estate to her own blood, took the precaution of excepting him specifically in the eleventh paragraph. We also observe that in the ninth paragraph the nephews and nieces are referred to by name, and she does not include any of the nephews and nieces of her deceased husband. The bequest in the eleventh paragraph is divided among "such of my nephews and nieces as shall then be living," and in the clause providing for the event of the death of any of such nephews and nieces she refers to them as 'said nephews and nieces.'

"As is pointed out by the auditor the words of a will are so controlling that if they apply with exactitude to one person such person shall take the legacy although parol and extrinsic evidence might make it appear clear that another person less exactly described was

the one intended, and if there is any doubt whether a testatrix intends to confine her bounty to her lawful issue the question is approached with the presumption that it is not her intention to disinherit her own blood. Every fair intendment must be made in favor of the heir or next of kin: Varner's Appeal, 87 Pa. 422.

"We start with a well settled definition of nephews and nieces and depend alone upon the exception in the eleventh paragraph to change the plain meaning of those words. If we place ourselves right back in the position of Sarah R. Lamberton when she was writing this will we would find her ready to describe Chess Lamberton who was receiving one-fourth of her estate, and the most natural thing in the world would be for the testatrix to call him her nephew. She then discloses an apparent plan to give the balance of her estate to her own kin. The portion of the residuary estate which she was about to distribute was to be used for a time for the benefit of her own kin. When she came to the eleventh paragraph she recalled that she referred to Chess Lamberton as a nephew and she would naturally exclude him if she intended that that portion of the estate should go to her own blood, so that there would be no misunderstanding."

The decree of the orphans' court is affirmed, appellant to pay the costs.