For the errors pointed out the judgment of the trial court is reversed and the cause is remanded.

**HOUSTON BANK & TRUST CO. et al. v. LANSDOWNE.**

No. 11866.

Court of Civil Appeals of Texas. Galveston.

April 24, 1947.

Rehearing Denied May 8, 1947.

Vinson, Elkins, Weems & Francis and Frank G. Dyer, all of Houston, for appellant Bank.

Sam Neathery, of Houston, for appellant intervenor.

Fulbright, Crooker, Freeman & Bates, Newton Gresham, and Sam W. Cruse, all of Houston, for appellee.

CODY, Justice.

This suit was brought against appellee Lansdowne by appellant Bank as the executor of the will of L. B. Moody, deceased, and as residuary legatee under said will, to recover an item of property, amounting to $25,369.22 at the time of Mr. Moody's death, which Mr. Lansdowne claimed as forming a part of the legacy which passed to him under Mr. Moody's will.

Mr. Moody and Mr. Lansdowne had entered into a written agreement of partnership on November 1, 1937. As will appear hereafter, the agreement provided that the profits of the partnership were withdrawable, but from the evidence it could have been inferred that Mr. Lansdowne only withdrew the sums he lived on, and that Mr. Moody withdrew relatively much less of the profits than did Lansdowne. The aforesaid sum of $25,369.22 was the amount standing to the credit of testator on the books of Lansdowne and Moody in the Moody Partnership Distributive Account, at the time the firm was dissolved by testator's death on June 22, 1945.

And the question presented by this appeal is whether said sum passed under testator's will to Lansdowne, or passed under the residuary clause to the Bank in trust for the use and benefit of testator's daughter, Laura Beth Moody, a minor.

Mr. Moody was an able and highly respected lawyer, and at the time of his death was a wealthy man. No contention is made that he did not make ample provision for his daughter, measured by the extent of his wealth at the time of his death.

The provisions of his will are as follows:

In the first paragraph was the direction to pay testator's just debts. The second paragraph provided:

"I do hereby give, devise and bequeath to my friend and business partner, G. U. Lansdowne, all of my interest in the firm of Lansdowne & Moody, including such profits as have not been divided."

In the third paragraph a house and lot was bequeathed to Mrs. Lansdowne in appreciation of her years of service as testator's secretary and office manager, with the direction that the inheritance tax thereon be borne by his estate. The fourth paragraph contains the residuary bequest. The codicil, so far as material, provided:

"The bequest to my friend and business partner, G. U. Lansdowne, of all my interest in the firm of Lansdowne & Moody does not include the indebtedness to me for money loaned said firm evidenced by said firm's promissory notes in my favor."

The will was executed on April 13, 1943; the codicil on July 12, 1943.

The partnership agreement provided that testator had contributed to the partnership business $10,000, and that Lansdowne was to manage the business and contribute all of his time thereto, and that the partners were to share in the profits and losses equally. It was further provided that Lansdowne should have the right to withdraw the money he needed to live on; that all transactions should be shown on the books; and that an inventory should be taken on November 1st of each year, and there should be "credited to each partner on its books of account his one-half of

such profits, same to be withdrawn by him at his pleasure." Provision was further made that Moody would lend money to the partnership and should receive therefor the same interest as the bank would have received, and that such loans should be evidenced by the firm's promissory notes.

From a report made to the partnership by a certified public accountant, based on an audit made as of November 1, 1941, among the entries made upon the balance sheet, of said date, under "liabilities" was the following:

"Partnership—Capital Account
Original investment ........ $10,000.00
Net Loss to November 1st,
1940 ...................... 8,608.69

1,391.31

Net Profit Fiscal year ended October 31, 1941......... 12,854.56

Total Capital Invested .............. $14,245.87"

From a like report made by the same accountant, the Balance sheets as at November 31, 1942, showed the following:

"Partnership—Capital Account
Original Investment ....... $10,000.00
Net Profit for 1942......... 26,972.42

36,972.42

Less Partners Withdrawals 5,481.62

Total Capital Investment....... $31,490.80"

From a like report by the same accountant the Balance Sheet as at October 31, 1943, showed the corresponding entry as:

"Partnership—Capital Account
Original Investment ....... $10,000.00
Net Profit 1943 ............. 23,384.12
Partners Accounts ......... 11,074.70

$44,458.82"

From a like report by the same accountant, the Balance sheet as at October 31, 1944, the corresponding entry was shown thereon as:

"Partnership—Capital Account
Original Investment ....... $10,000.00
Net Profit 1944 ............. 14,075.65
Partnership Accounts ..... 27,458.82

$51,534.47"

The court below appointed an auditor, and his report, so far as deemed to the purpose, was:

That the accounts to which profits were credited were carried on the books of the partnership as "L. B. Moody, Partnership Distributive Account", and "G. U. Lansdowne, Partnership Distributive Account." That all withdrawals received by Lansdowne were ultimately charged to his "Partnership Distributive Account." That the balances, aside from the original investment account, to credit of L. B. Moody, were, upon the following dates:

"October 31, 1942............................. $12,394.24
April 13, 1943 (date will was executed)... 9,348.32
July 12, 1943 (date codicil was executed) 9,348.32"

That on December 31, 1942, each "Partner's Distributive Account" was charged $3,045.92, "To adjust book inventories; at November 30, 1942, to amounts disclosed by physical count made as of that date."

The court-appointed auditor's report showed the Balance Sheet as at June 21, 1945. On this Balance Sheet the "assets" were divided into "current" "fixed" and "other"; the "liabilities" were divided into "current," "non-current," "reserves" and "capital accounts." The "capital accounts," so shown, were:

"Capital Accounts
Investment:
G. U. Lansdowne .......... $5000.00
L. B. Moody ............... 5000.00 $10,000.00
"Partners' Distributive Accounts:
G. U. Lansdowne .......... $10,729.81
L. B. Moody ............... 27,213.12

$37,942.93

$47,942.93"

The auditor's report further showed that the profits for the period from October 31, 1944, until June 22, 1945, amounted to $3,687.80.

The case was tried to the court without a jury, and judgment was rendered that Lansdowne go hence without day. No conclusions of fact and law were requested. At this point it should be noted that the guardian of testator's minor daughter intervened, adopting the pleadings of the Bank. Both the Bank and the guardian have appealed.

The Bank predicates its appeal upon three points, reading:

1. "The trial court erred in failing to render judgment for Plaintiff against the

Defendant for $23,369.22 plus interest thereon at the rate of six per cent (6%) per annum from March 29, 1946."

2. "The trial court erred as a matter of law in holding that the $29,369.22 sued for herein passed to the Defendant under the Will and Codicil thereto of L. B. Moody, Deceased."

3. "The trial court erred in refusing to strike from the evidence the following testimony of the witness, Mrs. Ebba Jane Connally; That Mr. Moody had told her he never expected to take anything out of the business, that he had willed it. That he wanted to invest with his friend and had no further interest in it; Plaintiff having moved the Court to strike such testimony on the ground that it was irrelevant and immaterial and was for the purpose of varying the terms of Mr. Moody's Will and Codicil."

The Guardian has predicated his appeal upon four points. The first three of his points are, substantially, those upon which the Bank predicates its appeal. The Guardian's fourth point reads:

4. "The Court erred in permitting the witness Frank Nice to testify that 'Mr. Moody said the investment of ten thousand dollars which he made in the business was for the purpose of finding a place to put his money, that he did not expect to withdraw the capital or any of the profits from the business unless I have to, in fact he considered any interest in the business a chance to make money earn revenue for me. Mr. Moody always said Mr. Lansdowne should draw out a sufficient amount to maintain himself in the manner he was accustomed to', over the objection of Intervener that the intent of testator cannot be shown by parol testimony."

#### Opinion.

 The cardinal rule of testamentary construction is to ascertain the intent of the testator and give it effect, and such intention, when ascertained, will control any arbitrary rule. "The will to be construed is rarely in exactly the same language as another will construed in any reported case, but is usually a thing unto itself. Accordingly it has been said that courts, in the construction of wills, are not to adhere rigidly to prece-

dents unless they are in every respect directly in point." Darragh v. Barmore, Tex.Com. App., 242 S.W. 714, 716.

 The intention of a testator " 'must be ascertained from the meaning of the words in the instrument, and from those words alone. But as he may be supposed to have used language with reference to the situation in which he was placed, to the state of his family, his property, and other circumstances relating to himself individually, and to his affairs, the law admits extrinsic evidence of those facts and circumstances, to enable the court to discover the meaning attached by the testator to the words used in the will, and to apply them to the particular facts in the case.' Hunt v. White, 24 Tex. [643], 652." Peet et al. v. Commerce & E. S. Ry. Co., 70 Tex. 522, 8 S.W. 203, 205. Again, "It is well settled that a will and a codicil should be construed together as if they had been executed at the time of the making of the codicil." Watson v. Lindsley, Tex.Civ.App., 2 S.W.2d 339, 341.

The testator's bequest to Lansdowne, construed in connection with the applicable codicil, reads:

"I do hereby give, devise and bequeath to my friend and business partner, G. U. Lansdowne, all of my interest in the firm of Lansdowne & Moody, including all such profits as have not been divided," which interest "does not include indebtedness to me for money loaned said firm evidenced by said firm's promissory notes in my favor."

At the time the will and codicil were executed the testator could tell, from the reports on the business which he held, that his Partnership Distributive Account showed him credited with $9,345.32, and he knew that the firm owed him $68,000 evidenced by its promissory notes. Did testator intend to include in his bequest to Lansdowne the item credited to him under his Partnership Distributive Account, which consisted of profits which he might have withdrawn, but which he allowed to be placed back into the business? Or did he intend to include only such profits as had accrued, or which might accrue after the close of a fiscal year and prior to his death? As appears from the foregoing statement the profits which accrued from October 31, 1944, until June 22,

1945 (when testator died) amounted to $3,687.80, one-half of which belonged to each partner. Under the Bank's contention it was one-half of this $3,687.80 which was embraced in the bequest to Lansdowne of all of testator's interest in the firm "including all such profits as have not been divided."

■ We think such contention of the Bank cannot be sustained. In the first place, the profits which might accrue between the beginning of any given fiscal year and the death of testator, would vary all the way from nothing to one-half of a year's profits, if there were profits. In the second place, the bequest of all of testator's interest in the firm would have as surely embraced the uncalculated profits, as it would have been subject to uncalculated losses. If such had been the intention of the testator, the words "including all such profits as have not been divided" would have been superfluous. "It is to be presumed that the testator, in writing his will, did not intend to use meaningless or superfluous words, but that he used each word and term advisedly and that he intended that every provision, clause or word used, should have a meaning in the disposition of his property." Aron v. Aron, Tex. Civ.App., 168 S.W.2d 917, 919 (writ refused).

It is quite evident that the testator, by using the language "including all such profits as have not been divided," was endeavoring to guard against the bequest being construed as meaning the minimum that would be embraced in "all of my interest in the firm of Lansdowne & Moody." As was held in Peerless Carbon Black Company v. Sheppard, Tex.Civ.App., 113 S.W.2d 996, 997 (writ refused), "The words 'includes' and 'including' are regarded * * * as being identical or equivalent to each other; and * * * unless the context in which such words are used requires, they are never regarded as being identical with or equivalent to 'mean and include,' nor with such less elastic words and terms as 'meant,' 'meaning,' or 'by which is meant.' * * * In 31 C.J. 395, § 3C, it is said that while the word 'including' is susceptible of different shades of meaning, 'it is generally employed as a term of enlargement and not a term of limitation, or of enumeration.' "

The partnership provision reading "an inventory shall be taken of all the assets of the partnership on November 1st of each year during its continuance, and there shall be credited to each partner on its books of account of his one-half of such profits, same to be withdrawn by him at his pleasure," will support the inference, if it does not compel it, that the parties contemplated, as a policy, the plowing back of the profits into the business. Such a policy was in fact carried out. Lansdowne was apparently dependent upon the business as the means of his livelihood, but he had permitted approximately $10,000 of profits which he might have withdrawn to be plowed back into the business. Whereas testator had made but slight withdrawals, and permitted his profits to be plowed back into the business to the extent of $25,369.22.

■ Now partners are the joint proprietors of the partnership business. And the act of a partner in withdrawing or plowing profits back into the business is an act of proprietorship. The plowing back of profits into the partnership business does not establish a new and different relationship. It does not transform the partner (joint proprietor) into a creditor of the partnership, nor the partnership into his debtor. To be sure if the partners are operating under an agreement under which the partnership is obligated to pay interest on the profits which are not withdrawn, the relationship of debtor and creditor with reference to such interest bearing sum is created. But here the Partners' Distributive Accounts did not bear interest. And the right and interest of each partner in the partnership by virtue of the Partners' Distributive Accounts was proprietary in character.

Profits which have been plowed back into the business, have not been withdrawn, and may be properly described as "such profits as have not been divided." The fact that such profits were subject to distribution, and were credited upon the books to the Partners' Distributive Accounts may reasonably be construed as having been "credited," and "not divided." And such profits might naturally be described as "such profits as have not been divided." That the testator considered that he had expressed the intention by his will to include in his bequest to Lans-

downe the profits which were subject to withdrawal by himself, we think is made clear by the codicil. "The bequest to my friend and business partner, G. U. Lansdowne, of all my interest in the firm of Lansdowne & Moody, does not include indebtedness to me for money loaned said firm evidenced by said firm's promissory notes in my favor." It was evidently Mr. Moody's opinion, and he was an able lawyer, that his bequest to Mr. Lansdowne was reasonably subject to being construed as including the firm's promissory notes which totalled $68,000. Had he intended that his bequest to Lansdowne of all of his interest in the firm be limited to the narrowest meaning that "all my interest in the firm of Lansdowne & Moody" would bear, it seems certain he would have excluded the account here in question. Having enlarged the bequest to Lansdowne of all his interest in the firm by the use of the clause "including all such profits as have not been divided," and then, when he executed the codicil to show the limitation to be placed on such bequest, he indicated that his construction placed but one limitation on the bequest, that it "does not include indebtedness to me for money loaned said firm evidenced by said firm's promissory notes." Even if it could be said that the Partners' Distributive. Accounts were subject to being construed as an indebtedness of the firm, under the quoted language, the same being testator's construction of the limitation placed by him on the bequest, such item would not be excluded from the bequest.

■ Under the evidence hereinbove discussed we conclude that the court was warranted, if not compelled, to conclude that the $25,369.22 in question was included in the specific bequest made to appellee, Lansdowne. We set out the Bank's points 1 and 2. In substance appellant James G. Donovan, Guardian and next friend of the minor, Laura Beth Moody, contends by his points 1 and 2 that the court erred in ruling that the item of $25,369.22 passed to appellee Lansdowne, and in refusing to award judgment therefor against appellee, together with interest at the legal rate from March 29, 1946. We overrule said points 1 and 2.

The witness Mrs. Connally testified in substance that Mr. Moody told her he had gone into the retail business because he wanted to invest with his friend, that he never expected to take anything out of the buiness. This testimony was excepted to. The court ruled that he would take the exception to such testimony along with the case.

The witness Nice, who was the certified public accountant that made the annual audits of Lansdowne & Moody, testified in substance, that Mr. Moody told him that the investment of $10,000 made in the business was for the purpose of finding a place to put his money, and that he did not expect to withdraw the capital or profits unless he had to, and he considered any interest in the business was a chance to make money earn revenue for him, that Lansdowne should draw out a sufficient amount to maintain himself in the manner he was accustomed to. This evidence was excepted to, and the court said he would take it along with the case.

■ The case was tried without a jury. It is presumed that the testimony was not considered in rendering the judgment. Gulf Coast Water Co. v. Hamman Exploration Co., Tex.Civ.App., 160 S.W.2d 92; Western Union Telegraph Co. v. Mang, Tex.Civ. App., 100 S.W.2d 158; Brannon v. Morgan, Tex.Civ.App., 106 S.W.2d 841.

We overrule the Bank's point 3 and the Guardian's points 3 and 4.

Without further discussion, since these conclusions require an affirmance of the judgment of the court below, it will be so ordered.

Affirmed.