**Griess Estate**

*Wells, Campbell, Yohn & Wells*, for accountant.

TAXIS, P. J., March 19, 1969.—The reason or purpose for the filing of the present account is the death of Norman Griess, last surviving life tenant, on March 20,

1967, and, as a consequence of his death, this trust terminates and principal and income are now distributable. . . .

A question has arisen concerning interpretation of Item SECOND (1) of the will.

James H. S. Griess died on December 9, 1921.. His will, inter alia, makes the following bequests:

"To each of my sons, Norman and Raymond, I bequeath the sum of Ten Thousand Dollars ($10,000) in trust, they to receive the income of same during their natural lives, the principal to go to their heirs forever. In case either dies without heirs, his estate shall revert back to my own nephews and nieces, each to receive share and share alike."

Raymond Griess died on September 22, 1965, never having married and with no children. Subsequently, Norman Griess died on March 20, 1967, also never having married and with no children.

At the time of Norman's death, he was survived by three nieces of testator; namely, Margaret Frey, Elizabeth M. Case and Alice Case Neiman. He was also survived by three children of each of three other nieces or nephews of testator who survived testator but predeceased him as the life tenant. They are Eleanor Cook, Dorothy Kline, Veronica Price, Ann Jane Dobry, Earl J. Case, Sister Mary Rose Cecelia, Stanley Eshbach, Curtis Frey and Earl Frey.

Although a testamentary gift to "heirs" has normally been held to mean those persons entitled to inherit under the applicable Intestate Act, there are many instances in which the word "heirs" has been construed to be limited to children or issue of the person designated. See 2 Hunter (2d Ed.) Estates, §13(b), pages 202-203; Hill Estate, 432 Pa. 269.

In the instant case, if the word "heirs" were construed to mean heirs under the Intestate Act, those heirs would include any nieces or nephews of testator. There-

fore, the alternate gift could in no eventuality become effective because if there were no intestate heirs surviving the life tenants, there could not possibly be any nieces or nephews of testator surviving life tenants because the former group includes all of the latter.

Since testator would not have intended such an illogical or impossible result, it is apparent that testator intended the word "heirs" to be limited to the children or issue of the life tenants. In view of the death of both of the life tenants without children or issue, the alternate gift takes effect.

"My own nieces and nephews" clearly refers only to the children of testator's brothers and sisters. The nieces and nephews of testator's wife are not included in this class in any determination of the class for a legal purpose, although they are sometimes included by courtesy in common parlance. See Black's Law Dictionary, "Niece," page 1195; Estate of Sarah R. Lamberton, Deceased, 105 Pa. Superior Ct. 348, 161 Atl. 596. Therefore, the nieces and nephews of testator's wife and their descendants do not participate in the distribution and were not given notice of the filing of the account or of the audit.

On the question of vesting where there is a devise of a life estate, followed by a remainder to a class of persons, some or all of whom are unborn, the remainder is contingent until the birth of a member of the class in whom it vests immediately, subject to open to let in all members of the class who may thereafter be born during the continuation of the particular estate. See 6 Hunter (2d Ed.), Vested and Contingent Interests, §5(c), pages 148-149. Therefore, all six of the nieces and nephews born during the lifetime of testator or during the lifetime of the life tenants had vested interests. Three of these nieces survived both testator and life tenants and each, therefore, takes a one-sixth share of the estate.

The other three nieces and nephews predeceased the life tenants. The death of a remainderman before that of the life tenant does not divest his interest; the class may increase but not diminish. Therefore, their interests having vested, the children of the three deceased nephews and nieces take their parents' share, per stirpes. There being three children of each of the deceased nephews and nieces, each such child takes a one-eighteenth share of the estate, representing one-third of his or her parent's one-sixth share.

The court concludes that the word "heirs" in testator's will must be construed to mean "children or issue"; that in view of the death of the life tenants without children or issue, the alternate gift takes effect; that the words "my own nieces and nephews" refer only to the nieces and nephews of testator and not those of testator's wife; that the remainders of the nieces and nephews of testator are vested and that the death of a remainderman before that of the life tenant does not divest his interest; that each of the three surviving nieces of testator takes a one-sixth share in distribution; and that the children of the deceased nieces and nephews of testator take their parents' share, per stirpes. . . .

And now, March 19, 1969, this adjudication is confirmed nisi.