**In the ESTATE OF Archie L. CARROLL, Deceased.**

**Otto WATERS, et al., Plaintiffs–Appellants,**

v.

**Helen HAWKINS, et al., Defendants–Respondents.**

No. 15518.

Missouri Court of Appeals, Southern District, Division One.

Feb. 9, 1989.

Kendall R. Vickers, Ewing, Carter, McBeth, Smith, Gosnell, Vickers & Hoberock, Nevada, for plaintiffs-appellants.

Morran D. Harris, Osceola, Donald B. Russell, Nevada, for defendants-respondents.

GREENE, Judge.

Plaintiffs, who are the children of the brothers and sisters of Dortha Carroll, deceased, appeal from a trial court judgment which construed the will of Archie L. Carroll, who was the surviving husband of Dortha, in a manner that excluded plaintiffs from being considered as beneficiaries of Archie's estate.

The relevant facts are not in dispute. Archie and Dortha had been married for over 57 years, and had no children. Dortha had eight nieces and nephews who were the children of her brothers and sisters. Archie had twelve nieces and nephews who were the children of his brothers and sis-

---

**1.** Defendant's motion for damages for frivolous appeal is denied.

ters. On May 9, 1978, the parties executed separate wills. In his will, Archie's residuary estate was bequeathed to Dortha. It also provided that in the event Dortha predeceased Archie, on Archie's death his residuary estate be liquidated and the proceeds be equally divided between "my nieces and nephews that are living as of the date of my death." Dortha's will contained similar provisions, and provided that if Archie predeceased her the residuary estate was to go to "my nieces and nephews that are living as of the date of my death." The wills were drafted by an attorney who was one of the witnesses to the wills. Dortha died July 5, 1980. Archie died September 19, 1986, leaving as his last will and testament the will dated May 9, 1978.

Plaintiffs then filed a petition to construe the will, seeking a declaration that Archie's bequest to "my nieces and nephews that are living as of the date of my death" included them, as well as children of Archie's brothers and sisters. At trial, plaintiffs offered the testimony of eleven witnesses, plus several exhibits. This evidence consisted of testimony regarding statements Archie had made to some of the witnesses stating an intention to benefit the children of the brothers and sisters of Dortha, and that he regarded them as his nieces and nephews as well as the nieces and nephews from his side of the family. There was also testimony that Dortha and Archie did not distinguish between nieces and nephews by consanguinity and those by affinity when referring to nieces and nephews, and that there was a warm family relationship between Archie and Dortha's blood kin.

Gary Clifford, the attorney who drew the wills, in an affidavit which was admitted into evidence, stated:

1. I was the scrivener of the Wills of both Archie L. Carroll and Dortha Carroll.

2. Both Dortha Carroll and Archie L. Carroll discussed their estate plan and testamentary wishes with me at the same time and place and executed said Wills in my presence at the same time and place.

3. I have no specific recollection of any of the advice I gave to Archie L. Carroll and Dortha Carroll with regard to their Wills.

4. I have no recollection of statements or expressions of intent by either Archie L. Carroll or Dortha Carroll with regard to their testamentary plan or intent, or of their directions to me concerning what they wanted their Wills to accomplish, other than the recitals contained in the Wills.

5. I have no recollection of any expressions of intent on the part of either Dortha Carroll of Archie L. Carroll to exclude as alternate legatees under their respective Wills the nieces and nephews of their respective spouses.

6. The only notes or other documents that I have regarding Archie L. Carroll or Dortha Carroll are the copies of the Wills, one sheet of my notes and a copy of the statement for the Wills, copies of which are attached and incorporated therein.

7. I have no recollection of any expressions of intent or any statements given to or by me regarding any of the documents attached hereto.

The attorney's notes referred to in the affidavit give no clue as to the testators' intent on the question in issue.

The trial court stated that it would receive all of the offered evidence with the reservation that it would only be considered if it found the phrase "my nieces and nephews" in Archie's will to be ambiguous.

The trial court then made findings, and entered judgment which reads as follows:

1. That Article 'TWO' of the Last Will and Testament of Archie L. Carroll directs that 'my estate shall be sold, liquidated and turned into cash and my residuary estate shall then be divided equally between my nieces and nephews that are living as of the date of my death.'

2. Plaintiffs, who are the nieces and nephews of Dortha Carroll, the deceased wife of Archie L. Carroll, and who preceded him in death, maintain that the

**738**

language of Article 'TWO' was meant and intended by the testator to include the nieces and nephews of Dortha Carroll as well as the nieces and nephews of Archie L. Carroll.

3. Under the law applicable to wills, the Court must give effect to words clear in meaning and capable of ready definition. Only when the terms of the will as written are not plain or when the will cannot be given effect as written because of some latent ambiguity may the Court consider outside evidence for the purpose of ascertaining intention.

4. The phrase 'my nieces and nephews' is clear and unambiguous and means the children of brothers and sisters.

THEREFORE, IT [IS] ADJUGED [sic], ORDERED AND DECREED that:

Only the children of the brothers and sisters of Archie L. Carroll are legatees under the terms of the Last Will and Testament of Archie L. Carroll and the personal representative is ordered to distribute the estate of Archie L. Carroll in accordance with the will so construed.

Since the case was court-tried, it is our duty to affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it is based on an erroneous declaration or application of law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

In their first point relied on, plaintiffs contend the trial court erred in declaring that the phrase " 'my nieces and nephews' " meant only the children of the brothers and sisters of the testator, not including the children of the brothers and sisters of the deceased spouse. This amounts to an argument that the trial court relied on an improper declaration of law in deciding this issue.

■ Since the will was professionally prepared, the words "my nieces and nephews" have legal effect and meaning. *Crist v. Nesbit,* 352 S.W.2d 53, 56 (Mo.App.1961). "[W]ords with a well-known technical meaning should be construed according to their technical meaning unless a contrary meaning clearly appears from the context

of the will," after considering the will as a whole. *Norris v. Norris,* 731 S.W.2d 844, 845 (Mo. banc 1987). There is nothing in Archie's will that expresses an intent on his part to have the term "my nieces and nephews" considered in any manner other than in its legal and technical sense.

■ In their brief, plaintiffs have not cited a single case from any state supporting their theory that the term "my nieces and nephews" includes the children of the sisters and brothers of one's spouse, and seemingly rely on dictionary definitions that the terms "niece" and "nephew" include the sons and daughters of a brother-in-law or a sister-in-law, citing Webster's Third New International Dictionary of the English Language, Unabridged (1969) and Black's Law Dictionary (5th ed. 1979). However, Black's Law Dictionary (rev. 4th ed. 1968), defines "nephew" in the following way: "In legal usage only children of brothers and sisters are called 'nephews' and 'nieces,' children of husband's or wife's brothers and sisters being so called only by courtesy." There is ample textbook and appellate opinion authority in support for such statement.

In 94 A.L.R. 30 (1935), it is stated the "testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptance.... [I]t is an inflexible rule of construction that the words of the will shall be interpreted in their strict and primary sense, and in no other, although they may be capable of some popular or secondary interpretation...." In 80 Am.Jur.2d *Wills* § 1198 (1975), it is stated:

The general rule is that the testator must be presumed to have used words in his will in their ordinary or primary sense and meaning.... 'Niece' and 'nephew' in their primary and ordinary sense mean the immediate descendants of the brothers and sisters of the person named.

In 95 C.J.S. *Wills* § 667 (1957), it is stated:

Usually, the terms 'nephews' and 'nieces' do not include nephews and nieces of

the testator's spouse, unless such intention appears or is expressed by the will as a whole, or where the testator referred to his nephews and nieces, but in fact had none of his own blood. In the absence of controlling language to the contrary, bequests to 'nephews and nieces' are held to mean only nephews and nieces by consanguinity, not affinity; and it is only by courtesy that the children of a husband's or wife's brothers and sisters are called nephews and nieces.

An observation to the same effect is also contained in the definitions of "Nephew" and "Niece" at the beginning of 66 C.J.S. (1950). While there is no Missouri case in point on the issue, case law from other jurisdictions is unanimous in support of the textbook observations just referred to. In *Terney v. Belton*, 239 Or. 101, 396 P.2d 557 (banc 1964), the question was whether the word "nephew" appearing in an inheritance tax statute included the son of a brother-in-law of the deceased. After observing that the legal meaning of the word "nephew" applied only to the son of a brother or sister, the Supreme Court of Oregon stated the presumption was that the Oregon legislature, when using the word "nephew" in the statute, was using it in accordance with its legal meaning. *Id.* 396 P.2d at 558.

In *Frederick v. Hoffman*, 7 Ohio App.2d 27, 218 N.E.2d 478 (1966), the testator died, leaving no surviving spouse or children. The testator's will left his residuary estate to "my nieces and nephews." In this will construction case brought by a child of a sister of testator's deceased wife, the court held there was no ambiguity in the possessive pronoun "my" or in the phrase "my nieces and nephews," and held that the phrase meant the children of testator's brothers and sisters, and did not include the children of the brothers and sisters of the deceased spouse. *Id.* 218 N.E.2d at 479–80.

*Baldwin's Coex'rs v. Curry*, 272 Ky. 827, 115 S.W.2d 333 (1938), is also a will construction case. The court held the words "nieces and nephews" when those terms are used in a will means the children of brothers and sisters of the testator, and does not include children of the brothers and sisters of one's spouse, unless the testator's intention to regard the spouse's nieces and nephews as his nieces and nephews is clearly expressed by the provisions of the will itself. *Id.* 115 S.W.2d at 335. In this case, the testator specifically referred to a niece by marriage by name in two different places in the will, and both times referred to her as "my niece." Therefore, the testator's intent was clear. *Id. Meglemry v. Meglemry*, 222 Ala. 229, 131 So. 906 (1931), *Schoen v. Siegmund*, 119 N.J. Eq. 524, 183 A. 292 (1936), and *In re Lamberton's Estate*, 105 Pa.Super. 348, 161 A. 596 (1932), are all will construction cases which hold that a bequest to "my nieces and nephews" as used in a will, in absence of controlling language to the contrary, means only nieces and nephews by consanguinity, and not by affinity. In *Lamberton's Estate, supra,* the court observed, " 'It is seldom the authorities on a question are so many and pointed as on this one'." The cases and pronouncements referred to herein are persuasive, and we know of no authority to the contrary.

If Archie, or his lawyer who drafted his will, had intended to include the children of the brothers and sisters of Dortha as beneficiaries under his will, it would have been easy for them to have done so, simply by referring to "our nieces and nephews" instead of "my nieces and nephews," or better still, by stating, "the children of (the named brothers or sisters of each spouse)." However, this was not done. "My" is the possessive form of the pronoun "I", while "our" is a possessive form of the pronoun "we." *American Heritage Dictionary of the English Language* (1970).

The clear and unambiguous legal meaning of the words "my nieces and nephews" means the children of the brothers or sisters of the declarant. The trial court's ruling to that effect was a proper declaration of law.

In their remaining point relied on, plaintiffs claim the trial court erred in not considering extrinsic evidence to the effect that the testator regarded the siblings of

his deceased spouse as his nieces and nephews, and intended to provide for them in his will.

The trial court, in explaining why it did not consider such evidence in deciding the issue, declared:

> Under the law applicable to wills, the Court must give effect to words clear in meaning and capable of ready definition. Only when the terms of the will as written are not plain or when the will cannot be given effect as written because of some latent ambiguity may the Court consider outside evidence for the purpose of ascertaining intention.

The court went on to declare the phrase " 'my nieces and nephews' " to be clear and unambiguous and to mean the children of the brothers and sisters of Archie.

■ A testator's intention must be determined by the will itself, and not by attempting to guess at what the testator may have meant. *Estate of IHL v. Oetting*, 682 S.W.2d 865, 867 (Mo.App.1984). Since the technical or legal meaning of the words "my nieces and nephews" as used in the will means the children of the brothers and sisters of the testator, and no contrary intent is expressed anywhere in the will, no ambiguity exists regarding the meaning of such words. Therefore, extrinsic evidence regarding the testator's intent was inadmissible. *Matter of Morrissey*, 684 S.W.2d 876, 878 (Mo.App.1984). The trial court was correct in refusing to consider such evidence. The point has no merit.

Judgment affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.