Nina R. MARTIN, Melvin E. Rainey, Marilyn Sinclair, Harvey Arnold, Armond Arnold, Billie Baker, Elsie Baker, Sandra Huse, Ginger Elizabeth Taylor, Michael E. Mathews, Newman Baker, and Claudia Arnold, Appellants,

v.

Paula PALMER, William H. Patrick, William R. Pogue, Karen Ann Mitchell, and Joe Patrick, Appellees.

No. 01–98–00816–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 2, 1999.

Tammy C. Manning, Houston, for Appellant.

Jimmy Walker, Houston, for Appellee.

Panel consists of Justices TAFT, NUCHIA, and EVANS.*

## OPINION

FRANK G. EVANS, Chief Justice (Retired).

This is an appeal from a summary judgment in favor of the plaintiffs. The appellees, who are nieces and nephews of Robert Leslie Pogue, deceased, initiated this declaratory judgment action to obtain a judicial declaration that the phrase "nieces and nephews," as used in the decedent's will, refers only to the decedent's nieces and nephews and not to the nieces and nephews of decedent's wife, Jimmie Kate Foster, who predeceased her husband.

We conclude that the appellees did not meet their burden of proving the absence of a genuine issue of material fact regarding the meaning of the phrase in question and did not, as a matter of law, show their entitlement to a declaratory judgment on that issue. We accordingly reverse the trial court's summary judgment and remand the cause for further proceedings.

### Standard of Review

The appellees, as movants for summary judgment, had the burden of showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. TEX.R. CIV. P. 166a; *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). Thus, the appellees, as plaintiffs in the declaratory judgment action, were required to offer conclusive proof establishing all elements of their claim in order to

---

* The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

be entitled to summary judgment. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986). In reviewing the summary judgment record, we must take the evidence favoring the non-movants as true and indulge every reasonable inference, as well as any doubts, in favor of the non-movants. *Id.,* at 60; *Bangert v. Baylor College of Med.,* 881 S.W.2d 564, 565–66 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

Applying this standard to the instant case, we conclude that the appellees failed to conclusively prove that Mr. Pogue, by use of the words "my nieces and nephews" in his will, intended to exclude the nieces and nephews of Mrs. Pogue from sharing in the bounty of his estate.

### The Pogue Family Relationship

In response to the appellees' motion for summary judgment, the appellants submitted the affidavit of Elsie Baker Pepperell, who had lived with Mr. and Mrs. Pogue for five or six years. According to this affidavit, Mr. and Mrs. Pogue had been married for about 50 years and had no children. Both spouses, however, treated certain of their nieces and nephews as their own children and commonly referred to their nieces and nephews on both sides of the family "as their own" without making any distinction as to which niece or nephew was related by blood. Mrs. Pogue's nieces and nephews called Mr. Pogue "Uncle" just as Mr. Pogue's nieces and nephews referred to Mrs. Pogue as "Aunt."

### The Pogues' Wills

The Pogues executed almost identical wills which were prepared by the same attorney. In each will, the testator devised his or her estate to the other spouse but provided that, if the other spouse did not survive, the entire estate would pass, in equal shares and per stirpes, to the testator's nieces and nephews. The testator's will thus provides:

> I give, devise, and bequeath all of my estate to my wife, provided that she survives me by sixty (60) days. If my wife does not survive for that period of time, then I give, devise, and bequeath all of my estate equally to *my nieces and nephews* per stirpes and not per capita.

(Emphasis added.)

According to the summary judgment proof, Mrs. Pogue's will contains a nearly identical provision that "mirrors" the quoted provision in Mr. Pogue's will. Both wills, which were executed on the same date, name Mrs. Pogue's nephew, Newman F. Baker, as independent executor under the will.

### The Probate Proceeding

Mrs. Pogue died March 18, 1989. Because she was survived by Mr. Pogue, her entire estate, which included an inheritance from her deceased sister, passed to him. After her death, Mr. Pogue continued to enjoy the company of his nieces and nephews, including those of his wife, and some of them took care of him until he died on December 4, 1993.

Upon Mr. Pogue's death, his wife's nephew, Newman F. Baker, filed application for probate of the will. In this application, Mr. Baker identified the nieces and nephews of Mrs. Pogue as well as the nieces and nephews of Mr. Pogue's own blood as beneficiaries of the testator's estate. The testator's will was admitted to probate on December 27, 1994.

### The Declaratory Judgment Action

■ The appellees subsequently initiated this declaratory judgment action and moved for a summary judgment to have the court declare, as a matter of law, that the term "nieces and nephews," as used in the testator's will, refers only to the children of the testator's brothers and sisters. The appellants, who are Mrs. Pogue's nieces and nephews, argue that the term "nieces and nephews," as used in the testator's will, is capable of different meanings and that the summary judgment proof re-

garding testator's situation, the circumstances existing at the time of the execution of the will, and other material matters show the existence of a genuine issue of material fact regarding the testator's intent to include the children of Mrs. Pogue's brothers and sisters along with his blood-related nieces and nephews as beneficiaries under his will.

## Texas Will Construction Law

■ Under Texas law, when a testator has used legal terms in his will that have been defined and sanctioned by judicial decisions to express his intentions as to the disposition of his estate, it is the duty of the courts to give those words their established legal meaning unless the context of the will shows a clear intention to the contrary. *See Mitchell v. Mitchell,* 151 Tex. 1, 244 S.W.2d 803, 806 (1951). On the other hand, if the testator's words are susceptible to more than one meaning, or are capable of being understood in more than one sense, the courts will consider extrinsic evidence that shows the meaning intended by the testator. *Unitarian Universalist Serv. v. Lebrecht,* 670 S.W.2d 402, 404–405 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

■ Accordingly, if some doubt or uncertainty exists regarding the testator's intended meaning of a particular word or phrase, the courts will consider extrinsic evidence concerning the circumstances attending the testator's situation in relation to his family, property, and affairs at the time of the execution of the will. *See Hunt v. White,* 24 Tex. 643, 652 (1860). Thus, if the testator has not clearly identified the object of his bounty, the court may receive parol evidence showing who the testator meant by a particular expression of relationship. *See Schwarte v. Bunting,* 210 S.W.2d 655, 656–57 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.) (close and affectionate relationship between testatrix and sister); *Norton v. Smith,* 227 S.W. 542 (Tex.Civ.App.—Beaumont 1920, writ dism'd) (testator's financial situation and

friendly relationship); *Ladd v. Whitledge,* 205 S.W. 463, 464 (Tex.Civ.App.—Amarillo 1918, writ ref'd). This extrinsic evidence is admissible not to vary or contradict the testator's intent, as evidenced by unambiguous language in his will, but simply to explain or clarify the testator's intended meaning of words or phrases that do not have a clear and definite legal meaning.

■ As this court explained in *Knesek v. Witte,* 715 S.W.2d 192, 196 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.):

> The intention of a testator must be ascertained from the meaning of the words in the instrument, and from those words alone; but, as she may be supposed to have used language with reference to the situation in which she was placed, to the state of her family, her property, and other circumstances relating to herself individually, and to her affairs, the law admits extrinsic evidence of those facts and circumstances. Consideration of these facts assists the court in determining the meaning attached by the testator to the words used in the will and aids in applying them to the particular facts in the case. *Houston Bank & Trust Co. v. Lansdowne,* 201 S.W.2d 834 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.).

*Id.*

This rule of will construction is demonstrated more specifically in *Stewart v. Selder,* 473 S.W.2d 3 (Tex.1971). In that case, the issue was whether the word "cash," as used in the testatrix's will, meant only checks and bank deposits on hand at her death or whether it also included testatrix's interest in stocks, bonds, securities, and other property convertible into cash. *Id.* The trial court concluded that the term "cash" did include securities readily convertible to cash, but the court of appeals reversed, holding that the will was not ambiguous and that the meaning of its language should be determined without reference to extraneous circumstances. The Texas Supreme Court affirmed the

judgment of the court of appeals, but held that extrinsic evidence was admissible and should have been considered "without regard to whether the will is ambiguous." *Id.* at 7. In its opinion, the Texas Supreme Court expressed its awareness of the decisions issued by "a number of courts" stating or suggesting that extraneous evidence was not admissible when a court was construing an unambiguous will. But the Court, dismissing those statements as being not entirely accurate, held "where the intention of the testator is not clearly expressed by the language of the will, it may be found by looking to the provisions of the instrument as a whole *and to the circumstances surrounding its execution.*" *Id.* (emphasis added). The Court explained that such evidence is admissible *without regard to whether the will is ambiguous* to assist the court in determining the sense in which the words were used by the testator. *Id.*

█ Based on our analysis of the rules of will construction established by Texas courts, we conclude: (a) that extrinsic evidence is inadmissible to show the testator intended to say something other than that which is clearly stated in his will, and (b) such evidence is admissible to explain the sense of words used by the testator that do not have a clear, definite, or technical meaning. *See Stewart,* 473 S.W.2d at 7; *Haupt v. Michaelis,* 231 S.W. 706, 707 (Tex.Com.App.1921); *Najvar v. Vasek,* 564 S.W.2d 202, 206 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

### The Appellees' Authorities

The appellees contend that the phrase "my nieces and nephews" in decedent's will is unambiguous and must, as a matter of law, be construed to include only the blood nieces and nephews of Mr. Pogue. In support of this assertion, they cite no Texas authorities, recognizing this is a case of first impression in Texas. They do, however, cite a number of cases from other jurisdictions in which courts had determined that the phrase "nieces and nephews" referred only to the children of the testator's brothers and sisters.

In essence, these cases held the phrase "nieces and nephews," when used in its "primary sense" did not include nieces and nephews by marriage. *See Baldwin's Co-ex'rs v. Curry,* 272 Ky. 827, 115 S.W.2d 333, 335 (1938); *Boyd v. Perkins,* 130 Ky. 77, 113 S.W. 95, 96 (1908); *Estate of Carroll,* 764 S.W.2d 736, 739 (Mo.Ct.App. 1989); *In re Lamberton's Estate,* 105 Pa.Super. 348, 161 A. 596, 597 (1932); *Meglemry v. Meglemry,* 222 Ala. 229, 131 So. 906 (1931); *In re Root's Estate,* 187 Pa. 118, 40 A. 818, 819–20 (1898); and *Terney v. Belton,* 239 Or. 101, 396 P.2d 557, 558 (1964). All of these decisions were issued more than a quarter-century ago when Black's Law Dictionary contained a restricted definition of the terms "niece" and "nephew."[1] Most of the other cases cited by appellees relate to the question of whether the term "niece" or "nephew" includes a "grand-niece" or "grand-nephew." *See Bank of New York v. Shillito,* 14 N.Y.S.2d 458 (Sup.Ct.1939); *Frederick v. Hoffman,* 7 Ohio App.2d 27, 218 N.E.2d 478, 479–80 (1966); *Klagstad's Will,* 264 Wis. 269, 58 N.W.2d 636, 638 (1953); *In re Richards' Estate,* 150 Misc. 102, 268 N.Y.S. 465, 472 (1934); and *Shalkhauser v. Beach,*

1. Black's Law Dictionary, 3rd Edition (1933) strictly defines "niece" and "nephew" as the "daughter (or son) of one's brother and sister." Black's revised 4th. Edition (1968) expands this definition with an explanation that: "In legal usage only children of brothers and sisters are called 'nephews' and 'nieces,' children of husband's or wife's brothers and sisters being called only by courtesy." Black's 5th Edition (1979) and all subsequent editions have expanded this definition to mean that the terms "niece" and "nephew" include the sons and daughters of a brother-in-law or a sister-in-law, citing Webster's Third New International Dictionary of the English Language. This enlarged definition has been adopted as current English usage in other respected dictionaries. *See, e.g.,* Webster's New Collegiate Dictionary; The American Heritage Dictionary, Second College Edition; and Random House Unabridged Dictionary Second Edition.

14 Ohio Misc. 1, 233 N.E.2d 527, 530 (1968) (applying the "general rule" that the term means only the son or daughter of a brother or sister of the decedent). Several of the cases recognize that the more restricted definition may be enlarged by evidence showing the testator intended to use the term in its expanded sense. *See, e.g. In re Estate of Platt,* 147 N.Y.S.2d 716, 718 (Sur. Ct.1955) ("significance" of words such as "nieces and nephews" may be enlarged and their definition expanded by the manner in which the testator used them in a particular case).

Of the out-of-state cases cited by appellees, the *Carroll* case seems to be the most factually similar. In that case, the appellants offered proof to show that the testator and his spouse had prepared virtually identical wills on the same day; that the testator regarded the nieces and nephews of his wife the same as the nieces and nephews from his side of the family; that the testator and his wife did not distinguish between nieces and nephew by consanguinity and those of affinity; and that there had been a warm family relationship between the testator and his wife's nieces and nephews. For reasons not entirely clear, the Missouri Court of Appeals refused to apply the 1979 Black's Law Dictionary definition of the terms "niece" and "nephew," and adopted instead Black's earlier (1968) version of the definition. 764 S.W.2d at 738. Deciding that the term "my nieces and nephews" had a "clear" and "technical" legal meaning, the court refused to consider extrinsic evidence showing the testator's close family relationship with his wife's nieces and nephews. *Id.* at 737–38. In essence, the *Carroll* court determined that because the will had been "professionally prepared," the words "my nieces and nephews" should be construed in a "legal and technical" sense, which precluded the consideration of extrinsic evidence showing the sense in which the testator had used the terms. *Id.* at 738.

We decline to follow the rationale of the out-of-state cases cited by appellees for several reasons. First, we conclude that the rationale of those cases is contrary to rules of will construction established by the courts of this state. *See, e.g., Stewart v. Selder,* 473 S.W.2d 3 (Tex.1971). Second, we reject the rationale as lacking merit in current English usage. *See Hocker v. Stevens,* 18 S.W.2d 842, 843 (Tex.Civ.App.—El Paso (1929) writ ref'd) (court not bound to accept invalid rationale of other state courts). Finally, the instant case is an appeal from a summary judgment, which requires a different standard of review than any of the cases cited by appellees. Thus, the cases cited by appellees cannot be considered directly on point, and in a will construction case we are not bound to rigid adherence to precedent unless in every respect the precedent is directly on point. *See Houston Bank & Trust Co. v. Lansdowne,* 201 S.W.2d 834, 837 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.).

The appellees do cite one Texas case, *Lehman v. Corpus Christi Nat'l Bank,* 668 S.W.2d 687 (Tex.1984), in support of their position that extrinsic evidence is inadmissible to explain the sense of the testator's words in designating a beneficiary of his estate. Contrary to appellees' argument, the *Lehman* decision is perfectly consistent with the Texas Supreme Court's earlier holding in *Stewart v. Selder.* In *Lehman,* a natural son sought to introduce extrinsic evidence to show that his father's adoptive son was not an intended beneficiary of their grandfather's will. The court properly rejected this evidentiary evidence, concluding that the adoptive son was covered by the literal terms of the will. *Id.* at 689. In its decision, the Texas Supreme Court recognized its prior holding in *Selder* and explained that the facts were simply different in that case. *Id.*

### Conclusion of this Court

We find no Texas authority supporting the appellees' position that the

phrase "my nieces and nephews" has been given such a clear, definite, and technical meaning that *in every case* and, *regardless of circumstances,* it must conclusively be construed as meaning only the nieces and nephews of the testator and not those of the testator's spouse. Applying the rules of will construction established by the courts of this state, we conclude that the phrase "my nieces and nephews" does not have such a clear, definite, and technical meaning that it is susceptible of only one legal interpretation *in every will construction case.* Based on the summary judgment record, we hold that the trial court erred in deciding, as a matter of law, that the phrase has such a clear, definite, and technical meaning that it must be given legal significance without regard to any consideration of the testator's situation and other material circumstances existing at the time of the execution of his will.

The summary judgment record reflects evidence tending to show that:

(1) Mr. and Mrs. Pogue lived together in marriage for 50 years and had no children born to them or adopted by them;

(2) Both treated their nieces and nephews from both sides of the family as their own children;

(3) Mrs. Pogue's niece lived with the Pogues and called them "Aunt and Uncle";

(4) Mr. Pogue referred to Mrs. Pogue's nieces and nephews as "his nieces and nephews";

(5) A portion of Mrs. Pogue's estate (which Mr. Pogue received under her will) had been inherited by Mrs. Pogue from her sister;

(6) Mr. and Mrs. Pogue had "mirror image" wills, in which both left his or her estate to "my nieces and nephews" if their spouse did not survive them;

(7) Mr. Pogue named one of Mrs. Pogue's nephews as the executor under his will.

In the posture of this summary judgment review, we must accept all such circumstantial evidence as true and indulge every reasonable inference in favor of the appellants. One such inference is that Mr. and Mrs Pogue intended by their wills to leave their entire estate (all of their separate property and one-half of the community) to the survivor of them, and if one died without a surviving spouse, then their estate passed to their nieces and nephews. Based on the circumstantial evidence, a fact-finder might reasonably infer that the Pogues both intended to pass their ultimate estates to their nieces and nephews without regard to whether they were related by blood or affinity. One might ask why, if this was their intention, they did not ask their scribner to clearly specify their intent in their wills? One possible answer is that the Pogues did not consider this to be a potential problem when their attorney was drafting their wills.[2] One might also ask why the Pogues used the term "my" nieces and nephews instead of "our" nieces and nephews when describing the objects of their bounty. One possible answer might be that the Pogues' attorney adopted the singular pronoun to avoid any inference of an intent to create joint and mutual wills with contractual obligations. *See, e.g., Wiemers v. Wiemers,* 683 S.W.2d 355, 357 (Tex.1984); *Fisher v. Capp,* 597 S.W.2d 393, 399 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165, 169 (1946).[3]

**2.** If, at the time the Pogues executed their wills in 1980, they had consulted current versions of the dictionaries published by Webster, Black's Law, American Heritage, or Random House, they would have found the words "niece" and "nephew" defined as meaning, respectively, a "daughter" and a "son" of "one's brother, sister, brother-in-law or sister in law."

**3.** Both wills contain provisions that expressly negate any intent to create a joint and mutual will with contractual obligations. The testator's will, for example, provides: "My wife and I are executing Wills at approximately the same time in which each of us is the primary beneficiary of the will of the other. These Wills are not being made because of any

In this summary judgment review, we do not decide what weight, if any, a fact-finder might give to such circumstantial proof in a trial on the merits. We decide only the issue of whether the trial court erred in refusing to consider such evidence and in rendering a summary judgment without regard to such evidence. We conclude that the trial court did so err and that such error requires a reversal of the summary judgment. Having reached this decision, we need not address appellant's third point of error asserting that the trial court improperly considered the testator's will to be part of the summary judgment record.

The summary judgment is reversed, and the cause is remanded to the trial court.

agreement between my said wife and myself. Either will may at any time be revoked at the

sole discretion of the maker thereof."